2004 UT App 376

**Joseph MACHOCK, Plaintiff and Appellee,**

v.

**Carl William FINK, Defendant, Third–Party Plaintiff, and Appellant,**

v.

**John Harmer, Third-party Defendant.**

**No. 20030301–CA.**

Court of Appeals of Utah.

Oct. 28, 2004.

---

R. Stephen Marshall and David·W. Tufts, Durham Jones & Pinegar, Salt Lake City, for Appellant.

Paul D. Veasy and Angie Nelson, Parsons Behle & Latimer, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE, Jr.

## OPINION

THORNE, Jr., Judge:

¶ 1 Carl William Fink brings this interlocutory appeal, challenging the trial court's denial of his summary judgment motion on Joseph Machock's claim for payment on a loan guaranty. We affirm.

## BACKGROUND

¶ 2 The facts relevant to this appeal are not in dispute. In 1998, John Harmer executed a $150,000 promissory note (the Note) to Joseph Machock in exchange for a loan. The debt was secured by a duly recorded trust deed (the Trust Deed) pledging Harmer's home as collateral for the loan. As further security, Carl William Fink executed a personal guaranty (the Guaranty) of the "full and timely payment and performance of all of [Harmer's] obligations under the Note." By its express terms, the Guaranty was unconditional, guaranteed payment and performance rather than collection, and was primary in nature.

¶ 3 Harmer made several· payments on the loan, but notified Machock in September 1999 that he would be unable to make any more payments. In October 1999, Machock sued Fink seeking payment on the Guaranty.

¶ 4 In January 2000, Fink filed an answer and counterclaim. Fink's answer did not assert a statute of limitations defense, either generally or under the Utah Trust Deed Act (the Act).[1] *See* Utah Code Ann. §§ 57–1–19 to –36 (2000). Fink's answer did assert as defenses that Machock's claim was "barred by the one action rule" and "barred by his failure to exhaust the collateral that secures the Note and by the provisions of the One Action Rule, Utah Code Ann. § 78–37–1." Fink also sought declaratory relief requiring Machock to foreclose against the collateral property before being allowed to pursue Fink on the Guaranty.

¶ 5 In February 2000, Machock voluntarily foreclosed on the Trust Deed, holding a properly noticed trustee's sale of the collateral property. Machock's credit bid of $1000 was the only bid at the sale, and Machock took title to the property subject to pending foreclosure by Brighton Bank, the first priority trust deed holder.

---

1. Presently, section 57–1–32 of the Act states:

   At any time *within three months after any sale of property under a trust deed* as provided in Sections 57–1–23, 57–1–24, and 57–1–27, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale. Before rendering judgment, the court shall find the· fair market value of the property at the date of sale. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs,·and expenses of·sale, including trustee's and attorney's fees, exceeds the fair market value of the·property as of the date of the sale. In any action brought under this section, the prevailing party shall be entitled to collect its costs and reasonable attorney fees incurred.

   Utah Code Ann. § 57–1–32 (Supp.2004) (emphasis added). Changes to·section 57–1–32 since the events giving rise to this appeal are inconsequential to our analysis, and for convenience we cite to the 2000 version the Act throughout this opinion.

¶ 6 In February 2001, Fink sought summary judgment on Machock's Guaranty claim, arguing that Machock had not filed a separate action for a deficiency judgment within three months after the trustee's sale as required by section 57–1–32 of the Act. The trial court denied Fink's motion. Although the trial court decided that the trustee's sale had "activated" section 57–1–32, it found the three month limitation to be a "mere procedural hurdle" that could be cured by allowing Machock to amend his complaint to assert a claim under the Act. Rather than requiring such an amendment, the trial court took the "more efficient approach" of applying the Act's substantive requirements to Machock's existing claim.

¶ 7 Fink requested and received permission to appeal the trial court's order, and brings this timely interlocutory appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Fink argues that he was entitled to summary judgment on Machock's loan guaranty claim because Machock did not file and serve an independent action for a deficiency judgment within three months after the trustee's sale of the collateral property. *See* Utah Code Ann. § 57–1–32 (2000). We review a trial court's denial of a motion for summary judgment for correctness. *See* Utah R. Civ. P. 56(c); *Surety Underwriters v. E & C Trucking, Inc.,* 2000 UT 71, ¶ 14, 10 P.3d 338.

## ANALYSIS

¶ 9 Fink's appeal raises a question of first impression. Section 57–1–32 of the Act requires that any action to recover the balance due upon an obligation secured by a trust deed must be commenced "within three months after any sale of property under a trust deed." Utah Code Ann. § 57–1–32 (2000). Here, Machock filed an action *prior* to the trustee's sale of the collateral property but did not file or serve a new action on Fink within three months *after* that sale. Fink argues that the Act therefore bars Machock's

recovery on the Guaranty.[2] We conclude that the trial court appropriately applied the Act's substantive protections to Machock's existing action.

¶ 10 Our analysis begins with the proposition that Machock's suit against Fink, prior to foreclosure on the Harmer property, was allowed under Utah law. A loan guaranty creates an independent obligation to the creditor, who is not required to pursue a debtor or a debtor's collateral prior to pursuing recovery under the guaranty. *See Strevell–Paterson Co. v. Francis,* 646 P.2d 741, 743 (Utah 1982) ("[A] guarantee of payment is absolute, and the guaranteed party need not fix its losses by pursuing its remedies against the debtor or the security before proceeding directly against the guarantor."). Accordingly, the Act did not preclude Machock from bringing suit against Fink prior to selling the Harmer property. Upon Machock's sale of the property, however, the trial court found that section 57–1–32 "became activated."

¶ 11 While we agree with the trial court that the Act applied after the property was sold, we believe that it is more accurate to characterize Machock's action as falling within the scope of the Act from its inception. To determine the Act's applicability to an action, we examine the nature of the action and ask "whether [it] is one 'to recover the balance due upon the obligation for which the trust deed was given as security.' " *Surety Life Ins. Co. v. Smith,* 892 P.2d 1, 3 (Utah 1995) (quoting Utah Code Ann. § 57–1–32). Actions "to recover the balance due on the indebtedness secured by [a] trust deed" are "the very type of action[s] contemplated by the Act." *Id.*

¶ 12 While the parties dispute the exact nature of the relief that Machock originally sought, his complaint stated that he sought "damages equal to the full amount due and owning [sic] under the Note." Clearly, from its inception, Machock's action sought "to recover the balance due upon the obligation

2. The Act does not expressly address loan guaranties. It has, however, been interpreted to protect debtors and loan guarantors equally. *See Surety Life Ins. Co. v. Smith,* 892 P.2d 1, 3 (Utah 1995) ("The Act makes no distinction as to whether the action is brought against the debtor or a guarantor.").

for which the trust deed was given as security" and thus fell within the scope of the Act. Utah Code Ann. § 57–1–32.

¶ 13 This determination does not, however, act to bar Machock's suit either before or after the trustee's sale. " 'When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous.' " *Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 9, 84 P.3d 1201 (*quoting State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667). The plain language of the Act, read in light of the ability of creditors to pursue unconditional loan guarantors without foreclosing at all,[3] *see Strevell–Paterson Co.*, 646 P.2d at 743, supports the trial court's application of the Act's protections to Machock's existing suit. Fink's proposed interpretation would require a creditor who has sued a guarantor prior to foreclosure to file and serve a second complaint, virtually identical to the first but for a few discoverable facts and the word "deficiency." Rather than require such a cumulative effort, we interpret section 57–1–32 to apply to existing creditor suits against loan guarantors upon the creditor's exercise of the option to foreclose on the collateral property. We see no need to require the filing and serving of a separate postforeclosure action, and we decline to do so.

¶ 14 This interpretation is consistent with prior cases applying the Act, which have identified two purposes behind section 57–1–32. First, as described in *City Consumer Servs. v. Peters*, 815 P.2d 234 (Utah 1991), the statute is meant to prevent creditors from reaping a windfall by obtaining valuable trust deed property at a fraction of its fair market value while pursuing the debtor (or guarantor) for the full amount due on the underlying note. *See* 815 P.2d at 238; *see also First Southwestern Fin. Servs. v. Sessions*, 875 P.2d 553, 555 (Utah 1994) ("[T]he

plain language of section 57–1–32 reveals that its purpose is to enable note holders to recover the balance due, if any, on defaulted loans."). Of more relevance to the instant case is the independent purpose of the three month limitation period, which "is satisfied when the foreclosing party provides *notice to the debtor* that a deficiency will be sought by filing the action." *Standard Fed. Sav. & Loan Ass'n v. Kirkbride*, 821 P.2d 1136, 1138 (Utah 1991) (emphasis added).

¶ 15 The trial court's application of the Act to Machock's existing action satisfies both of these purposes. By filing his action, Machock placed Fink on notice that Machock was seeking to recover "damages equal to the full amount due and owning [sic] under the Note." The claim for damages was inherently and foreseeably flexible, as the amount due and owing on the Note could change upon further payment on the debt or be offset by funds received from foreclosure and sale of the collateral property. Thus, upon being served with Machock's complaint, Fink was in the same position as the defendants in *Kirkbride:* "[w]hen the initial action was filed, they received all the benefit the three-month limit conferred on them." *Id.* at 1139. Once the property actually was sold, the trial court correctly applied the provisions of the Act to protect Fink against a potential windfall to Machock. *See Surety Life Ins. Co. v. Smith*, 892 P.2d 1, 3 (Utah 1995) (stating that the Act's "protections apply to *any action* to recover the balance due on the obligation secured by a trust deed, *following a nonjudicial foreclosure sale* " (second emphasis added)).

¶ 16 We conclude that the trial court's decision to allow Machock's action to proceed subject to the Act's fair market value offset provisions is consistent with the plain language of the Act. This interpretation satisfies the Act's purposes of requiring notice and

---

**3.** Our holding today pertains only to suits against loan guarantors, and implicitly rests on a creditor's ability to pursue a loan guarantor prior to foreclosure or without foreclosing at all. *See Strevell–Paterson Co. v. Francis*, 646 P.2d 741, 743 (Utah 1982). By contrast, suits against the debtor on a note are barred by Utah's "one-action rule" until "after foreclosure or sale of the security and then only for the deficiency then

remaining unpaid." *Lockhart Co. v. Equitable Realty*, 657 P.2d 1333, 1334 (Utah 1983) (quoting *First Nat'l Bank of Coalville v. Boley*, 90 Utah 341, 61 P.2d 621, 623 (1936)); *see also* Utah Code Ann. § 78–37–1 (2002). Because a suit against the debtor on a note cannot be filed prior to foreclosure, it necessarily must be filed within the subsequent three month window allowed by Utah Code section 57–1–32.

preventing unjust enrichment, while respecting the right of creditors to pursue loan guarantors prior to foreclosure or without foreclosing at all.

## CONCLUSION

¶ 17 Fink received notice of Machock's intent to enforce the Guaranty when Machock filed suit on the Guaranty without foreclosing, as permitted under Utah law. Nothing in the plain language or intent of the Act required the initiation of a new action after the property was in fact sold at foreclosure. Accordingly, the trial court was correct in applying the Act's protections to Machock's existing suit. We affirm the trial court's denial of Fink's motion for summary judgment.

¶ 18 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.