2006 UT 30

**Joseph MACHOCK, Plaintiff and Respondent,**

v.

**Carl William FINK, Defendant and Petitioner,**

v.

**John Harmer, Third–Party Defendant.**

No. 20041014.

Supreme Court of Utah.

May 16, 2006.

Paul D. Veasy, Angie Nelson, Salt Lake City, for plaintiff.

R. Stephen Marshall, David W. Tufts, Salt Lake City, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 In this case, we consider a provision of the Utah Trust Deed Act ("UTDA") that gives a creditor three months to file a deficiency action after foreclosure of a trust deed. Respondent Joseph Machock made a loan to John Harmer that was secured by a junior trust deed to Harmer's home. Petitioner Carl Fink guaranteed payment on the loan. When Harmer defaulted, Machock sued Fink on the guaranty, later foreclosed the trust deed, then continued to pursue Fink for the amount due without filing a deficiency action. We must determine whether Machock's breach-of-guaranty complaint satisfied the UTDA's requirement that a creditor file a deficiency action within three months of foreclosure. We conclude that it did because Fink had notice that Machock was pursuing the deficiency, and Machock's recovery is limited by the UTDA's fair-market-value offset.

## BACKGROUND

¶ 2 This action arises out of a $125,000 loan that Machock made to Harmer, and for which Fink guaranteed payment. In return for the loan, Harmer executed both a note promising to pay Machock $150,000 on de-

mand and a junior trust deed to his Bountiful home. As an additional condition to extending the loan, Machock required Harmer to "obtain a guarantee from [Fink] of the full and timely payment and performance of all of [Harmer's] obligations under the Note." Fink signed an agreement to "unconditionally guarantee" Harmer's "full and timely payment and performance." Harmer made efforts to repay the note but, when Machock demanded payment in September 1999, informed Machock that he would not be able to make any more payments. After unsuccessfully demanding that Fink pay Harmer's obligations under the note, Machock sued Fink in October 1999 "for damages equal to the full amount due and owning [sic] under the Note, but in no event less than $150,000."

¶ 3 In Fink's answer and counterclaim, he claims he understood that Machock would not enforce the guaranty agreement if Harmer defaulted on the note, but instead would foreclose the trust deed to the Harmer property to recover the balance due on the obligation. Accordingly, after Harmer defaulted, Fink "demanded that Machock seek foreclosure of the [trust deed]." Machock subsequently did so. Although Fink had notice of the trustee's sale, he chose not to bid. Indeed, at the February 29, 2000 trustee's sale, Machock made the only bid and took title to the property subject to Brighton Bank's first priority trust deed.

¶ 4 After taking title to the property, Machock encouraged Fink to undertake the obligations under the Brighton Bank trust deed, but he also clearly stated that he would continue pursuing recovery from Fink under the guaranty agreement. Machock's counsel informed Fink's counsel in a letter that "[i]n the event the first trust deed is foreclosed, Mr. Machock will continue to seek recovery under Mr. Fink's guaranty for the *entire amount of the deficiency* represented by Mr. Harmer's note." (Emphasis added.) Fink declined to assume the obligations under the Brighton Bank trust deed, and Brighton Bank's successor in interest foreclosed, leaving Machock with no benefit from the Harmer property.

¶ 5 No later than April 18, 2000, Fink knew that Machock's trustee's sale had left a deficiency. In October 2000, almost eight months after the trustee's sale, Fink filed an amended answer, amended counterclaim, and third-party complaint. In these pleadings, Fink did not assert a statute of limitations defense, either generally or under Utah Code section 57-1-32 (Supp.2005), but he did argue that "Fink's obligation under the Guarantee ... should be reduced by the fair market value of the real property upon which Machock foreclosed." Fink further asserted that he was entitled to a declaration that Machock's only recourse was to foreclose the trust deed to the Harmer property and pursue Harmer himself. Machock responded that "this issue has been mooted by the completion of foreclosure proceedings against the Harmer residence, which failed to yield any funds to satisfy Machock's lien when Machock was unable to sell the Harmer residence before the foreclosure of the prior first trust deed."

¶ 6 Fink subsequently filed a motion for summary judgment arguing that Machock's breach-of-guaranty complaint had failed to state a claim for relief. Specifically, Fink argued that, pursuant to the UTDA, a deficiency complaint is the exclusive method for recovering a deficiency on an obligation after a lender forecloses on a trust deed, and because Machock had not filed a deficiency complaint meeting the statutory requirements within the three months following foreclosure, he was barred from recovering from Fink. The district court agreed with Fink that Machock's foreclosure on the Harmer property had "activated" the UTDA's statutory limitations on recovery but concluded that Machock's breach-of-guaranty complaint satisfied the requirements of the UTDA by giving Fink notice that Machock intended to pursue any deficiency. Fink requested and received permission to pursue an interlocutory appeal.

¶ 7 The court of appeals affirmed. *Machock v. Fink*, 2004 UT App 376, 101 P.3d 404. It ruled that Utah law permitted Machock to pursue Fink under the guaranty agreement without first foreclosing the trust deed. *Id.* ¶ 10. The court further ruled that the UTDA governed Machock's guaranty action from its inception because Machock was seeking " 'to recover the balance due on the indebtedness secured by [a] trust deed.' " *Id.* ¶¶ 11–12 (quoting *Surety Life Ins. Co. v. Smith*, 892 P.2d 1, 3 (Utah 1995)) (alteration in original). The court of appeals then concluded that, although the UTDA applied to Machock's suit against Fink, Machock did not need to file a "cumulative" complaint labeled "deficiency." *Id.* ¶ 13. Finally, the court of appeals noted that its ruling is consistent with the two purposes of the statute: (a) "to prevent creditors from reaping a windfall by obtaining valuable trust deed property at a fraction of its fair market value while pursuing the debtor (or guarantor) for the full amount due on the underlying note"; and (b) to provide notice to the debtor (or guarantor) "that a deficiency will be sought by filing the action." *Id.* ¶ 14 (citations omitted). The court concluded that these purposes were satisfied because Machock was not in a position to extract more out of the note than was promised, and Fink had notice that Machock was pursuing any deficiency by enforcing the guaranty agreement. *Id.* ¶ 15. We granted certiorari to review the decision of the court of appeals. We have jurisdiction pursuant to Utah Code section 78–2–2(5) (2002).

## STANDARD OF REVIEW

¶ 8 On certiorari, " 'we review the decision of the court of appeals, not of the trial court.' " *Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 11, 89 P.3d 155 (quoting *Mitchell v. Christensen*, 2001 UT 80, ¶ 8, 31 P.3d 572). In this case, the court of appeals reviewed the trial court's denial of a motion for summary judgment. *Machock v. Fink*, 2004 UT App 376, ¶ 8, 101 P.3d 404. "Because a summary judgment presents questions of law, we accord no particular deference to the court of appeals' ruling and review it for correctness." *Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 11, 89 P.3d 155 (citation and internal quotation marks omitted).

## ANALYSIS

¶ 9 The issue before us is whether a pre-foreclosure complaint against a guarantor

satisfies the UTDA's requirement that a deficiency complaint be filed within three months after a trustee's sale. Fink argues that the court of appeals erred by allowing Machock to proceed against him without filing a new deficiency complaint. Specifically, Fink first contends that Machock's complaint was invalid from its inception because, where an obligation is secured by a trust deed, a creditor must foreclose the trust deed before filing any action against either the debtor or the guarantor. He then argues that Machock's breach-of-guaranty complaint does not satisfy the pleading requirements for a deficiency action under Utah Code section 57–1–32 (Supp.2005).

¶ 10 We conclude that a creditor need not foreclose a trust deed prior to seeking recovery from a guarantor of payment. Once a creditor elects to foreclose a trust deed, however, section 57–1–32 provides the only procedure for obtaining recovery of the remaining balance due. Finally, we conclude that section 57–1–32 does not bar Machock from pursuing a deficiency judgment because Fink had timely notice that Machock was seeking recovery of the deficiency and any recovery will, under the UTDA, necessarily be offset by the fair market value of the property.

## I. A CREDITOR MAY PROCEED DIRECTLY AGAINST A GUARANTOR OF PAYMENT WITHOUT FORECLOSING A TRUST DEED

¶ 11 Fink first contends that the one-action rule required Machock to foreclose the trust deed to Harmer's Bountiful home before bringing a claim based on the guaranty. We disagree.

¶ 12 The one-action rule is established by statute. It provides that "[t]here can be but one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter." Utah Code Ann. § 78–37–1 (2002). We have interpreted this statute as preventing a creditor from "suing the debtor personally on the note until it first forecloses against the real property." *City Consumer Servs., Inc. v. Peters,* 815 P.2d 234, 236 (Utah 1991). We have also recognized the statute's applicability to trust deeds. *Id.* We have not directly addressed, however, whether the one-action rule applies to actions against guarantors. We take this opportunity to do so.

¶ 13 We have held that "a *guarantee of payment* is absolute, and the guaranteed party need not fix its losses by pursuing its remedies against the debtor or the security before proceeding directly against the guarantor." *Strevell–Paterson Co. v. Francis,* 646 P.2d 741, 743 (Utah 1982). But Fink argues that this rule does not apply where the collateral is real property. The sole support he offers for this argument is *Surety Life Insurance Co. v. Smith,* 892 P.2d 1 (Utah 1995), in which we held that the protections of Utah Code section 57–1–32 (Supp. 2005) apply to deficiency actions against guarantors. In essence, Fink contends that, because *Surety Life* applied one foreclosure rule to guarantors, all foreclosure rules apply to guarantors, including the one-action rule. We disagree.

¶ 14 The one-action rule does not apply to suits against guarantors of payment because (1) the holding in *Surety Life* is based on the language of section 57–1–32, not principles of foreclosure law generally, (2) the purpose of the one-action rule is not furthered by extending its application to guarantors, and (3) applying the one-action rule to guarantors unnecessarily limits parties' ability to allocate risk. We will address these points in turn.

¶ 15 First, our holding in *Surety Life* was based specifically on section 57–1–32's broad language. In *Surety Life,* the creditor foreclosed a trust deed, purchased the property for much less than market value, and brought an action against the guarantor more than three months after the trustee's sale. 892 P.2d at 2, 3 n. 2. The creditor argued that the guaranty was independent of any security for the trust deed note and, thus, section 57–1–32 did not apply. *Id.* at 3. We concluded that the type of instrument on which the action was founded was irrelevant because, by its plain language, section 57–1–32 applies "to *any action* to recover the balance due on the obligation secured by a trust deed, following a nonjudicial foreclosure

sale," regardless of whether the creditor is suing the debtor or the guarantor. *Id.* Thus, in *Surety Life,* we concluded only that section 57-1-32 applies to guarantors and did not address the applicability of other foreclosure rules to suits against guarantors.

¶ 16 Second, the plain language of the one-action rule statute does not mandate its application to guarantors, and construing the statute to do so would not further the purpose the rule was intended to serve. We interpret a statute according to its plain meaning and seek to effectuate the intent of the legislature. *See State v. Ireland,* 2006 UT 17, ¶ 11, 133 P.3d 396. The text of the one-action rule contains no direct reference to actions against guarantors, but instead speaks in terms of "action[s] for the recovery of any *debt* ... secured solely by mortgage upon real estate." Utah Code Ann. § 78-37-1 (2002) (emphasis added). Although we could arguably interpret this language broadly enough to apply to actions against guarantors, it is more readily interpreted as protecting only debtors.

¶ 17 Furthermore, construing the one-action rule broadly would do nothing to serve the purposes for which the Legislature passed the rule. The Legislature passed the one-action rule to "eliminate harassment of debtors and multiple litigation which sometimes occurred under the common-law rule which allowed a creditor to foreclose and sell the land, and to sue on the note." *Utah Mortgage & Loan Co. v. Black,* 618 P.2d 43, 45 (Utah 1980). As application of the one-action rule to guarantors would not lessen harassment of debtors or eliminate multiple litigation against debtors, the purpose of the rule is not served by applying it to actions against guarantors. Furthermore, to the extent that the one-action rule has the purpose of preventing double recovery, that purpose is already served by section 57-1-32. Applying the one-action rule to actions against guarantors would not further that purpose.

¶ 18 Finally, applying the one-action rule to actions against guarantors would undermine the primary purpose of guaranties of payment. Guaranties are meant to protect the creditor. *See Strevell–Paterson Co. v. Francis,* 646 P.2d 741, 743 (Utah 1982). While a creditor may choose to accept a more limited guaranty of *collection* (where recovery is conditioned on the creditor's exhaustion of remedies against the debtor), the law allows a creditor to bargain for the additional protection offered by an absolute guaranty of *payment. See id.;* 38 Am.Jur.2d *Guaranty* § 19 (1999). Under a guaranty of payment, the creditor may proceed directly against the guarantor. *Strevell–Paterson,* 646 P.2d at 743. Extending the one-action rule to guarantors would severely limit the effectiveness of guaranties of payment by eliminating the distinction between the two types of guaranties for notes secured by real property. This would be an undesirable result.

¶ 19 A guaranty of payment shifts much of the risk of delay or loss from the creditor to the guarantor by allowing the creditor to recover directly from the guarantor without exhausting the collateral or seeking recovery from the debtor. Without a guaranty of payment, a creditor may experience significant delay in waiting for a buyer willing to pay fair market value for a trust property. Furthermore, given our holding in *Surety Life,* creditors that, in the interest of expediency, choose to accept less than fair market value would suffer a loss of the difference between the sale price and the fair market value of the property. *See* 892 P.2d at 3. In effect, a guaranty of payment shifts to the guarantor the burden of exhausting the collateral and seeking a deficiency because, under the equitable doctrine of subrogation, the guarantor may step into the position of the creditor, foreclose the trust deed, and seek a deficiency from the debtor. *See Martin v. Hickenlooper,* 90 Utah 150, 59 P.2d 1139, 1140–42 (1936); 38 Am.Jur.2d *Guaranty* § 120 (1999). But application of the one-action rule would undermine the risk- and burden-shifting purpose of guaranties of payment because the creditor would be forced to foreclose the trust deed before bringing any action based on the guaranty agreement. In essence, application of the one-action rule to guarantors would transform all guaranties, regardless of the parties' intent, into guaranties of collection.

¶ 20 In sum, to abolish guaranties of payment in the context of debts secured by real property would unnecessarily limit parties' ability to allocate risk as they see fit. We therefore conclude that the one-action rule does not prevent creditors from bringing suit against a guarantor of payment prior to foreclosure. Thus, Machock's breach-of-guaranty complaint was not, as Fink argues, invalid from its inception under the one-action rule.

¶ 21 Having established that Machock's initial complaint based on the guaranty was allowable even though he had not foreclosed the trust deed, we next turn to the question of whether his decision to foreclose the trust deed activated section 57–1–32.

## II. IF A CREDITOR ELECTS TO FORECLOSE A TRUST DEED, UTAH CODE SECTION 57–1–32 PROVIDES THE ONLY POST–FORECLOSURE REMEDY

■ ¶ 22 As discussed in Part I, a creditor may proceed directly against a guarantor of payment without first foreclosing the trust deed. If a creditor elects to seek foreclosure of the trust deed, however, it must do so in accordance with the procedure set forth in the UTDA, Utah Code Ann. §§ 57–1–19 to –44 (2000 & Supp.2005). Following foreclosure, if the creditor wishes to seek additional recovery, Utah Code section 57–1–32 provides the exclusive procedure for obtaining such recovery. *Cox v. Green,* 696 P.2d 1207, 1208 (Utah 1985). In *Surety Life v. Smith,* we concluded that section 57–1–32 also provides the exclusive procedure to recover from a guarantor the balance due on a trust deed note following foreclosure. 892 P.2d 1, 3 (Utah 1995). Section 57–1–32 requires a

creditor to bring a deficiency action within three months of a trustee's sale and limits recovery to the amount of indebtedness and costs, offset by the fair market value of the property sold.[1] Thus, upon conclusion of a trustee's sale, a creditor may not recover any balance from either the guarantor or the debtor unless it satisfactorily complies with section 57–1–32. In other words, completion of a trustee's sale activates the requirements of section 57–1–32 as to both guarantors and creditors.

¶ 23 In this case, Machock initially chose to seek recovery by suing Fink based on their guaranty agreement. But Machock subsequently opted to liquidate the collateral by seeking foreclosure of the Harmer Trust Deed. Therefore, after the trustee's sale in February 2000, Machock could recover the balance due only by satisfying the provisions of section 57–1–32. Having determined that Machock's decision to foreclose the trust deed to Harmer's property activated the provisions of section 57–1–32, we next turn to the question of whether his breach-of-guaranty complaint satisfied that section's requirements.

## III. BECAUSE FINK HAD ADEQUATE NOTICE OF THE DEFICIENCY ACTION AND MACHOCK IS PRECLUDED FROM OBTAINING DOUBLE RECOVERY, SECTION 57–1–32 DOES NOT BAR MACHOCK'S DEFICIENCY ACTION

■ ¶ 24 Fink next argues that, under section 57–1–32, Machock's failure to file a new deficiency complaint within three months of the trustee's sale releases Fink

---

1. Utah Code section 57–1–32 (Supp.2005) provides as follows:

    At any time within three months after any sale of property under a trust deed as provided in Sections 57–1–23, 57–1–24, and 57–1–27, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale. Before rendering judgment, the court shall find the fair market value of the property at the date of sale. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expense of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale. In any action brought under this section, the prevailing party shall be entitled to collect its costs and reasonable attorney fees incurred.

    Although this section was amended in 2001, the changes are stylistic and do not affect the issues on appeal. We therefore cite to the current version.

from any promise to guarantee payment of the note. We disagree.

¶ 25 Utah Code section 57–1–32 (Supp. 2005) provides a three-month limitation for filing a deficiency action and includes specific pleading requirements. It states as follows:

At any time within three months after the sale of property under a trust deed ..., an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale.

*Id.* In *Standard Federal Savings & Loan Ass'n v. Kirkbride*, we recognized that section 57–1–32's requirement that a creditor file a deficiency action within three months is a "procedural hurdle," not an absolute bar to suit. 821 P.2d 1136, 1138 (Utah 1991). In *Kirkbride*, the creditor did not strictly comply with the three-month deadline because its initial deficiency complaint was dismissed without prejudice for failure to serve summons and the creditor did not refile until after the three-month period had run. *Id.* at 1137–38. We held that "the three-month limitation period['s] ... primary purpose is satisfied when the foreclosing party provides notice to the debtor [or guarantor] that a deficiency will be sought by filing the action," and concluded that the creditor's initial filing gave the debtor sufficient notice of that fact. *Id.* at 1138.

¶ 26 As a logical extension of our rationale in *Kirkbride*, we now determine that as long as the primary purposes of the statute are satisfied, an action will not be barred for failure to initially meet certain procedural requirements of section 57–1–32. The primary purposes of section 57–1–32 are (1) to prevent the creditor from purchasing the property for below market value at the

trustee's sale and then suing the debtor or guarantor for a large deficiency, *see City Consumer Servs., Inc. v. Peters*, 815 P.2d 234, 238 (Utah 1991) (discussing the purpose of the statute's fair market value provisions), and (2) to provide a debtor or guarantor with prompt notice that the creditor intends to pursue a deficiency so as to allow the debtor or guarantor to plan its finances, *Kirkbride*, 821 P.2d at 1138. The record in this case shows that these purposes were met and that Machock's failure to file a complaint strictly compliant with the statutory requirements of section 57–1–32 was a procedural defect that should not bar his deficiency action.

¶ 27 First, the purpose of preventing double recovery has been met in this case because Machock's recovery, if any, will, pursuant to the UTDA, be offset by the fair market value of the property at the time of the trustee's sale.[2] Second, the statute's purpose of requiring a creditor to notify a debtor or guarantor within three months of foreclosure that it will seek a deficiency is satisfied in this case because the record shows that Fink had sufficient notice before, during, and after the foreclosure that Machock was seeking a deficiency. The record shows that Fink knew (1) that Machock was seeking the full amount due on the note, (2) that Machock foreclosed the Harmer Trust Deed, and (3) that a deficiency remained after the trustee's sale. Machock's breach-of-guaranty complaint sought payment of the full amount due and owing on the note. When Machock held a trustee's sale, Fink had notice but chose not to bid. After the sale, Machock informed Fink that the first trust deed was in danger of foreclosure and, if Machock was not able to sell the property, that he would "continue to seek recovery under Mr. Fink's guarantee for the entire amount of the deficiency represented by Mr. Harmer's note." Based on these facts, we conclude that Fink had adequate notice that Machock was seeking a deficiency.[3] Thus,

---

2. Utah Code section 57–1–32 requires that the debt be offset by "the fair market value of the property as of the date of the sale." The property in this case is the Harmer property as encumbered by the Brighton Bank trust deed. Thus, although an unencumbered Harmer property may have had a substantial market value, the encumbered Harmer property at issue necessarily had a lower fair market value.

3. We note that not every breach-of-guaranty action will give the guarantor adequate notice under section 57–1–32. But in this case, the notice

because the purposes of section 57–1–32 have been satisfied, the procedural defects in Machock's complaint do not act as a bar to his pursuing a deficiency action.

¶ 28 While we conclude that the procedural defects in Machock's complaint do not bar suit, we also conclude that he has the burden of correcting those defects to the extent possible. The complaint is defective in that it fails to plead certain required facts. Utah Code section 57–1–32 requires that a creditor specifically plead "[1] the entire amount of the indebtedness that was secured …, [2] the amount for which the property was sold, and [3] the fair market value of the property at the date of sale." Fink knew the first two facts and could easily discover the third. Thus, Fink does not appear to be, nor has he argued that he was, prejudiced by the lack of a separate deficiency pleading in this case. Nevertheless, the statute contains these pleading requirements for good reason. Having notice of these facts gives a debtor or guarantor specific information about what is at stake in the lawsuit. To require Fink to serve discovery documents on Machock to learn what Machock should have disclosed in the pleadings would be inappropriate under the statute. We conclude, therefore, that Machock must amend his complaint to plead the required facts. Accordingly, the district court should grant Machock leave to do so.

## CONCLUSION

¶ 29 The court of appeals correctly concluded that Machock's failure to strictly comply with the procedures of Utah Code section 57–1–32 does not bar his continued pursuit of a deficiency judgment against Fink. The statutory one-action rule does not apply to actions against guarantors, so it did not prohibit Machock from bringing a breach-of-guaranty action prior to foreclosure of the trust deed. Once Machock foreclosed the junior trust deed, however, section 57–1–32 governed Machock's rights of recovery and limited him to a deficiency judgment. The

litigation pending against Fink gave him sufficient notice under section 57–1–32 that Machock intended to pursue a deficiency, and the court of appeals' decision correctly limited Machock's recovery by imposing the fair-market-value offset required by that section. Because the breach-of-guaranty complaint satisfied the notice and prevention-of-double-recovery purposes of section 57–1–32, that section does not bar Machock's deficiency action. Nevertheless, Machock must amend his complaint to plead the required facts under section 57–1–32. We therefore affirm the decision of the court of appeals. We also order the district court to (1) award Machock costs and reasonable attorney fees for this appeal in accordance with the guaranty agreement [4] and (2) grant Machock leave to amend his complaint.

¶ 30 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge BARRETT concur in Justice DURRANT's opinion.

¶ 31 Having disqualified himself, Associate Chief Justice WILKINS did not participate herein; District Court Judge WILLIAM W. BARRETT sat.

---

was clearly adequate to allow Fink to plan his finances.

4. Both Machock and Fink requested attorney fees should they prevail on this petition, and both the guaranty agreement and Utah Code section

57–1–32 arguably mandate such an award. As Fink did not dispute in his reply brief that Machock would be entitled to attorney fees if he prevailed, Fink impliedly stipulated that an award is appropriate.