2014 UT App 172

**TOWN & COUNTRY BANK,**
**Plaintiff and Appellee,**

v.

**Robert C. STEVENS and Brett L. John,**
**Defendants and Appellants.**

No. 20130446–CA.

Court of Appeals of Utah.

July 25, 2014.

Shawn T. Farris, for Appellants.

Barry E. Clarkson and Kimball A. Forbes, for Appellee.

Senior Judge PAMELA T. GREENWOOD authored this Opinion, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.[1]

## Opinion

GREENWOOD, Senior Judge:

¶1 Defendants Robert C. Stevens and Brett L. John (collectively, Guarantors) appeal the trial court's grant of partial summary judgment in favor of Town & Country Bank (the Bank). We affirm.

¶2 In December 2008, the Bank loaned Fairground Properties, Inc. (Borrower) $1,380,000 pursuant to a promissory note. The loan was secured by a deed of trust (the Fairgrounds Deed of Trust) encumbering twenty-six parcels of real property located in Hurricane, Utah. Pursuant to the terms of the promissory note, Borrower was to make monthly 6.5% interest-only payments to the Bank beginning in January 2009 and to repay the principal plus any remaining interest in one lump sum on December 17, 2010. Guarantors signed personal guarantees (the Guarantees) in which they "absolutely and unconditionally" guaranteed payment of the note.

¶3 In early 2009, Stevens sought to move one of his businesses, Keystone Repair, which was then located in La Verkin, Washington County, Utah, to two parcels encumbered by the Fairgrounds Deed of Trust (Lots 46 and 47). To facilitate this project, Borrower negotiated a Change in Terms Agreement (the CIT Agreement) with the Bank, in which the Bank agreed that Borrower could substitute Lots 46 and 47 with other parcels owned by Stevens in La Verkin (Lot 2 and Lot 5). In anticipation of the move to Hurricane, Stevens let Keystone Repair's La Verkin business license lapse. However, Stevens continued to store a number of vehicles in Keystone Repair's storage yard. The City of La Verkin warned Stevens that it would impose fines if the vehicles were not moved, but the City of Hurricane would not permit Stevens to move the vehicles to the new property until he obtained a building permit, which he could not do until Lots 46 and 47 became unencumbered. According to Guarantors, the Bank agreed to expedite the finalization of the CIT Agreement in order to help Stevens avoid the fines. This alleged agreement to expedite was not reduced to writing. When Stevens failed to move the vehicles, the City of La Verkin imposed fines, and on October 29, 2009, the City of La Verkin obtained a judgment against Stevens (the La Verkin judgment), which was recorded in Washington County on November 12, 2009.

¶4 The CIT Agreement was finally signed in July 2010. Pursuant to the CIT Agreement, Stevens signed a deed of trust (the Indian Knolls Deed of Trust) in favor of the Bank, encumbering Lot 2 and Lot 5 as sub-

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

stitute collateral for the note. Stevens represented that he held "good and marketable title of record to [Lot 2 and Lot 5] in fee simple, free and clear of all liens and encumbrances."

¶ 5 Eventually, Stevens sold Lot 2 for $88,000. Pursuant to the terms of the Indian Knolls Deed of Trust, the Bank was the beneficiary of the proceeds from the sale of Lot 2. However, because the La Verkin judgment was recorded before the Indian Knolls Deed of Trust, the title company would not insure the title until the La Verkin judgment was satisfied. In order to clear the title, the Bank paid the City of La Verkin $40,000 of the Lot 2 sale proceeds to satisfy the La Verkin judgment.

¶ 6 The principal of the loan became due on December 17, 2010, but Borrower did not pay it. Guarantors assert that Borrower and the Bank reached an agreement to renew the promissory note for an additional two years but that the Bank "reneged" on the agreement. This alleged agreement was also not reduced to writing. When Borrower failed to pay the loan principal in accordance with the promissory note, the Bank instituted nonjudicial foreclosure proceedings. In response, on May 10, 2011, Borrower filed Chapter 11 bankruptcy.

¶ 7 On April 5, 2012, the bankruptcy court confirmed Borrower's Reorganization Plan, which provided that the Bank would retain its status as a secured creditor; that Borrower would sell the individual parcels that had been encumbered by the Fairgrounds Deed of Trust and use 80% of the proceeds to pay off the promissory note; that the deadline for paying off the note would be May 2017 rather than the December 2010 deadline indicated in the promissory note; and that the interest rate going forward would be 4% rather than the 6.5% stated in the note.

¶ 8 Relying on the Guarantees, the Bank sued Guarantors for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. Relying on the Indian Knolls Deed of Trust, the Bank also sued Stevens for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. The Bank sought summary judgment on its breach of contract claims. Guarantors opposed summary judgment, asserting that there were disputed issues of fact regarding whether the Bank had breached the implied covenant of good faith and fair dealing and whether the La Verkin judgment lien was enforceable. They also asserted that the Bank could not recover from them because the Bank's loan to Borrower "continues to be over-collateralized and secured" and because the Bank would "realize its payments through the Plan of Reorganization."

¶ 9 The trial court determined that there were "no disputed issues of material fact" and that the Bank was "entitled to judgment as a matter of law" on its breach of contract claims against Guarantors for breach of the Guarantees and on its breach of contract claim against Stevens for breach of the Indian Knolls Deed of Trust. Accordingly, the trial court entered judgment against Guarantors in the amount of $1,352,011.18 and against Stevens in the amount of $40,000. The trial court also awarded the Bank its attorney fees and costs. Guarantors now appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Guarantors first assert that summary judgment was precluded by disputed issues of fact regarding whether the Bank breached the implied covenant of good faith and fair dealing, whether the La Verkin judgment lien was enforceable, and whether the Reorganization Plan altered the terms of the Guarantees. Guarantors also assert that the trial court could not enter judgment against them for breach of the Guarantees so long as Borrower continued to make payments pursuant to the Reorganization Plan and that the one-action rule should be extended to preclude such judgments. Finally, Guarantors argue that the La Verkin judgment lien was not enforceable against Lot 2 and that the trial court therefore erred in concluding that Stevens breached the Indian Knolls Deed of Trust.

¶ 11 Summary judgment is appropriate when "there is no genuine issue as to any

material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "Accordingly, in reviewing a trial court's grant of summary judgment, we consider only whether [it] correctly applied the law and correctly concluded that no disputed issues of material fact existed." *Pigs Gun Club, Inc. v. Sanpete Cnty.*, 2002 UT 17, ¶ 7, 42 P.3d 379 (alteration in original) (citation and internal quotation marks omitted).

## ANALYSIS

### I. Disputed Issues of Fact

■■■ ¶ 12 Guarantors first assert that the trial court erred in granting summary judgment to the Bank on its claims for breach of the Guarantees because there were disputed issues of fact regarding Guarantors' defense that the Bank breached the implied covenant of good faith and fair dealing. "The obligation of good faith requires each party to refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226 (citation and internal quotation marks omitted). Guarantors assert that the Bank breached the covenant by reneging on oral promises to expedite the land swap and to extend the term of the note. But Guarantors are not parties to these alleged agreements, and they fail to explain or analyze how the Bank's failure to follow through with agreements between the Bank and Borrower impaired Guarantors' rights under the Guarantees or negated Stevens's breach of the warranty of clear title in Lot 2. Because Guarantors have failed to adequately explain how the alleged factual disputes are material, they have failed to carry their burden of persuasion on appeal.[2] *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 31, 54 P.3d 1054 ("[O]nce the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to

present evidence that is sufficient to establish a genuine issue of material fact."); *Smith v. Smith*, 1999 UT App 370, ¶ 9, 995 P.2d 14 ("Appellant bears the burden of demonstrating the validity of her points on appeal.").

■■ ¶ 13 Guarantors also assert that there are disputed issues of fact relating to whether the La Verkin judgment lien was enforceable. Namely, they assert that the lien "was not specifically recorded against Lot 2" and that the La Verkin judgment "did not comply with statutes concerning judgments recorded in Registry of Judgments." However, the Bank does not dispute that the lien was not specifically recorded against Lot 2 and disagrees with Guarantors only as to the legal effect of the recording. And whether the La Verkin judgment lien complied with statute is a legal question, not a factual one. Thus, we reject Guarantors' contention that there is any dispute of fact relating to this issue and consider only the legal question of whether the lien, as recorded, was enforceable against Lot 2 or constituted an encumbrance on the property in contravention of Stevens's representations. *See infra* ¶¶ 22–24.

¶ 14 Finally, Guarantors suggest that there are material facts in dispute regarding whether the Guarantees were "altered when the Borrower created and commenced performance under the Reorganization Plan." Although Guarantors allude to this argument in their opening brief, they do not develop it until their reply brief, and even there, Guarantors have failed to cite relevant legal authority supporting their position. At oral argument, counsel for the Guarantors conceded that he was unaware of any legal authority supporting his position but asserted that there was no authority supporting the Bank's position either.

¶ 15 We agree with the Bank that *NCNB Texas National Bank v. Johnson*, 11 F.3d 1260 (5th Cir.1994), provides persuasive, on-point authority. The defendant guarantor in *Johnson* advanced essentially the same argu-

---

2. Because we conclude that Guarantors have failed to establish the existence of a material factual dispute regarding the implied covenant of good faith and fair dealing, we need not discuss whether the statute of frauds, the parol evidence rule, or any other factors precluded the trial court from considering the alleged oral modifications, as the Bank asserts.

ment made by Guarantors in this case: that a "confirmed plan of reorganization" barred suit against him and that "there is no deficiency on the notes since the reorganization plan expressly provides that the ... loans will be fully repaid." *Id.* at 1266. The United States Court of Appeals for the Fifth Circuit determined that the guarantor's argument "lack[ed] merit" and held, "The discharge of a debtor in reorganization proceedings does not affect a guarantor's liability." *Id.* The court explained that the reorganization plan did not constitute an "accord and satisfaction ... because there [had] been no accord. Reorganization proceedings are judicial, not contractual, even where a secured creditor voluntarily participates." *Id.* We find the Fifth Circuit's reasoning persuasive, particularly in light of the fact that Guarantors have provided us with no contrary authority. Accordingly, we reject Guarantors' argument that there was an existing material issue of fact regarding whether the Reorganization Plan altered Guarantors' obligations under the Guarantees because the issue is resolved as a matter of law.

## II. Breach of the Guarantees

¶16 Guarantors next assert that the trial court erred in granting summary judgment against them when Borrower was still making payments on the loan pursuant to the terms of the Reorganization Plan. In particular, they assert that Utah's one-action rule should be extended to protect guarantors in situations such as theirs. *See generally* Utah Code Ann. § 78B–6–901 (LexisNexis 2012). While acknowledging that our supreme court

has held that "[t]he one-action rule does not apply to suits against guarantors," *Machock v. Fink,* 2006 UT 30, ¶14, 137 P.3d 779, Guarantors argue that the holding should apply only to circumstances where a creditor seeks payment from a guarantor after a foreclosure sale, in which case recovery would be limited by Utah Code section 57–1–32, *see id.* ¶17; *see also* Utah Code Ann. § 57–1–32 (LexisNexis 2010). Where foreclosure has not yet been initiated, they argue, creditors should be precluded from obtaining a judgment against guarantors.[3]

¶17 The statutory one-action rule provides, "There is only one action for the recovery of any debt, or the enforcement of any right, secured solely by mortgage upon real estate...." Utah Code Ann. § 78B–6–901(1). But in *Machock,* the Utah Supreme Court held that "[t]he one-action rule does not apply to suits against guarantors" and that a creditor therefore need not foreclose against a debtor prior to pursuing an action against a guarantor. *Machock,* 2006 UT 30, ¶¶14, 20, 137 P.3d 779. The *Machock* court explained that the purpose of a guarantee of payment is to shift "much of the risk of delay or loss from the creditor to the guarantor" by permitting the creditor to recover from the guarantor rather than the debtor. *Id.* ¶19. When the creditor elects to do so, the guarantor then "step[s] into the position of the creditor" and may "foreclose the trust deed" and "seek a deficiency from the debtor," assuming all the burdens, risks, and delays that entails. *Id.* Thus, the *Machock* court reasoned, "application of the one-action rule

3. There are a number of bases on which we might reject this argument. First, as the Bank has pointed out, Guarantors do not appear to have preserved their one-action rule argument, and in fact, their brief fails to comply with the requirement that the appellant provide "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not preserved in the trial court." *See* Utah R.App. P. 24(a)(5)(A)-(B); *State v. King,* 2006 UT 3, ¶13, 131 P.3d 202 ("We have consistently held that a defendant who fails to preserve an objection at trial will not be able to raise that objection on appeal unless he is able to demonstrate either plain error or exceptional circumstances."). Furthermore, in the Guarantees themselves, Guarantors explicitly waived "any right *(includ-*

*ing the right, if any, under Utah's one-action rule* ...*)* to require [the Bank] to proceed against or exhaust any security held by [the Bank] at any time or to pursue any other remedy in [the Bank's] power before proceeding against Guarantor." (Emphasis added.) Nevertheless, because we are convinced that Guarantors' argument is clearly precluded by the supreme court's holding in *Machock v. Fink,* 2006 UT 30, 137 P.3d 779, we exercise our discretion to consider the issue. *See generally Patterson v. Patterson,* 2011 UT 68, ¶13, 266 P.3d 828 ("Our preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction. Consequently, we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal.").

would undermine the risk- and burden-shifting purpose of [guarantees] of payment."[4] *Id.*

¶ 18 One of the other reasons the *Machock* court gave for its ruling that the one-action rule does not apply to actions against guarantors was the fact that the rule's "purpose of preventing double recovery" is "served by section 57–1–32" of the Utah Code. *Id.* ¶ 17. When a creditor forecloses property pursuant to a trust deed but is unable to recover the full balance secured by the property, section 57–1–32 permits the creditor to seek a judgment for the remaining balance. *See* Utah Code Ann. § 57–1–32. However, section 57–1–32 provides, "The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale." *Id.* In *Surety Life Insurance Co. v. Smith,* 892 P.2d 1 (Utah 1995), the Utah Supreme Court held that a guarantor against whom a creditor seeks a deficiency judgment is entitled to the "fair market value credit" outlined by the statute. *Id.* at 2–3.

¶ 19 Relying on the *Machock* court's statement that section 57–1–32 is sufficient to protect guarantors even if the one-action rule is not applicable, Guarantors assert that the one-action rule should be applied to guarantors in their situation because the lack of a foreclosure precludes them from benefitting from the provisions of section 57–1–32. If they are not protected by section 57–1–32, they assert, the Bank "should have been estopped from maintaining a separate civil action against" them. However, the *Machock* court made clear that its decision was not limited to circumstances where foreclosure has been initiated and explicitly held that "the one-action rule does not prevent creditors from bringing suit against a guarantor of payment *prior* to foreclosure." *Machock,* 2006 UT 30, ¶ 20, 137 P.3d 779 (emphasis added); *see also Strevell–Paterson Co.*

*v. Francis,* 646 P.2d 741, 743 (Utah 1982) ("[A] guarantee of payment is absolute, and the guaranteed party need not fix its losses by pursuing its remedies against the debtor or the security before proceeding directly against the guarantor." (emphasis omitted)). In fact, *Machock* anticipated creditors recovering from guarantors prior to foreclosure, outlining two permissible options for creditors to pursue: the creditor may either seek recovery from the guarantor, requiring the guarantor to then seek recovery from the debtor pursuant to "the equitable doctrine of subrogation," or the creditor may foreclose against the debtor and seek a deficiency judgment from the guarantor, in which case it must comply with the terms of section 57–1–32. *Machock,* 2006 UT 30, ¶¶ 19, 22, 137 P.3d 779.

¶ 20 Furthermore, as the Bank points out, its suit against Guarantors will not result in double recovery because it still cannot collect more than the amount it is owed under the promissory note. *See Western Steel Co. v. Travel Batcher Corp.,* 663 P.2d 82, 83–84 (Utah 1983) ("The law is well settled that an obligee is entitled to be paid in full but cannot exact double recovery."). The judgment merely makes it easier for the Bank to obtain what it is owed and shifts the burden of recovering the debt to Guarantors, just as the Guarantees intended. Accordingly, we determine that the trial court correctly granted judgment against Guarantors pursuant to the Guarantees.

### III. Breach of the Indian Knolls Deed of Trust

■ ¶ 21 Finally, Stevens argues that he did not breach the Indian Knolls Deed of Trust because his representation that Lot 2 was not encumbered by the La Verkin judgment lien was legally correct. Accordingly, he argues that the Bank was not required to pay off the La Verkin judgment in order to gain clear title to Lot 2 and that the $40,000 judgment for breach of the Indian Knolls

---

**4.** The *Machock* court acknowledged that a creditor could obtain a more limited guarantee of collection, rather than payment, "where recovery is conditioned on the creditor's exhaustion of remedies against the debtor," essentially allow-

ing invocation of the one-action rule. *Machock,* 2006 UT 30, ¶¶ 18–19, 137 P.3d 779. However, parties may "allocate risk as they see fit" and agree to guarantee payment, precluding application of the one-action rule. *Id.* ¶ 20.

Deed of Trust should not have been entered against him.

■ ¶ 22 First, Stevens asserts that the La Verkin judgment did not encumber Lot 2 because it was not specifically recorded against Lot 2. However, a judgment need not be recorded against a specific parcel of property to be enforceable against that property. All that is required is that a "judgment or an abstract of judgment" be "recorded in the office of the county recorder in which the real property of the judgment debtor is located." Utah Code Ann. § 78B–5–201(3)(a) (LexisNexis 2012). Thus, because the La Verkin judgment was recorded in Washington County and Lot 2 was located in Washington County, the recording of the La Verkin judgment was effective to create a lien against Lot 2, so long as the recording complied with the other requirements of section 78B–5–201.

¶ 23 Stevens also asserts that the La Verkin judgment lien was unenforceable because it did not comply with section 78B–5–201(4), which requires that "information identifying the judgment debtor" either appear "on the judgment or abstract of judgment" or be contained in a "separate information statement" filed with the county. *Id.* § 78B–5–201(4). Stevens asserts that the La Verkin judgment "itself did not include any debtor identifying information as required by statute, nor did the creditor file a judgment information statement to supplement the judgment with the information required." This assertion is inaccurate because the La Verkin judgment identified Robert C. Stevens by name as the judgment debtor. We recently held in *Irving Place Associates v. 628 Park Ave., LLC*, 2013 UT App 204, 309 P.3d 260, *cert. granted*, 320 P.3d 676 (Utah 2014), that a recorded judgment that identified the judgment debtor by name complied with the identification requirements of section 78B–5–201(4) and was sufficient to create a lien on real property. *Id.* ¶¶ 16–17. Stevens has given us no reason to depart from this precedent. Accordingly, we determine that the La Verkin judgment lien was enforceable against Lot 2.

■ ¶ 24 However, even if we were to determine that a defect in the recording of the lien made it ultimately unenforceable against Lot 2, the judgment would still constitute an encumbrance on the property that made Stevens's representation that he had "good and marketable title of record to [Lot 2] in fee simple, free and clear of all liens and encumbrances," a false representation. "[T]he term 'encumbrance' is more comprehensive than 'lien.' " *Brewer v. Peatross*, 595 P.2d 866, 868 (Utah 1979). "An encumbrance may be said to be any right that a third person holds in land which constitutes a burden or limitation upon the rights of the fee title holder." *Id. Compare Black's Law Dictionary* 1006 (9th ed.2009) (defining "lien" as "[a] legal right or interest that a creditor has in another's property"), *with id.* at 607 (defining "encumbrance" as "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien"). As the Bank points out, even if a separate information statement were required to make the lien enforceable against Lot 2, there was nothing to prevent La Verkin City from filing such a statement at any time. The very existence of the recorded La Verkin judgment created the potential for litigation and belied Stevens's representation that he had "good and marketable title" to Lot 2.[5] Thus, regardless of whether the recorded La Verkin judgment created an enforceable lien against Lot 2, it encumbered Lot 2 because it compromised the value of Stevens's title. *See Howe v. Professional Manivest, Inc.*, 829 P.2d 160, 163 (Utah Ct.App.1992). For this reason, the trial court did not err in determining that Stevens had breached the Indian Knolls Deed of Trust by falsely representing that he had good and marketable title to Lot 2.

### IV. Attorney Fees

¶ 25 The Bank was awarded its attorney fees below and has requested an award of fees on appeal based on provisions in the Guarantees and the Indian Knolls Deed of Trust, each of which permit the Bank to

---

**5.** The title company clearly contemplated the possibility of litigation, as it declined to issue title

insurance on Lot 2 until the La Verkin judgment was satisfied.

recover attorney fees and costs incurred to enforce the terms of those contracts. *See generally* Utah R.App. P. 24(a)(9) (requiring that a party seeking fees on appeal "state the request explicitly and set forth the legal basis for such an award"). We determine that the Bank is entitled to an award of attorney fees reasonably incurred on appeal and remand for the trial court to calculate such an award. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)).

## CONCLUSION

¶ 26 We determine that there are no genuine issues of disputed material fact that would preclude summary judgment. We also conclude that the trial court correctly determined that Guarantors breached the Guarantees and that Stevens breached the Indian Knolls Deed of Trust. Finally, we conclude that the Bank is entitled to an award of attorney fees on appeal. We therefore affirm and remand for the trial court to calculate the Bank's attorney fees on appeal.