2005 UT App 257

**TOM HEAL COMMERCIAL REAL ESTATE, INC., Plaintiff and Appellant,**

v.

**Glen OVERTON and Zions Holding Company, L.C., Defendants and Appellees.**

**Utah Association of Realtors and National Association of Realtors, Amicus Curiae.**

No. 20040519–CA.

Court of Appeals of Utah.

June 3, 2005.

Jeremy C. Sink and Allan O. Walsh, McKay, Burton & Thurman, Salt Lake City, for Appellant.

Steven F. Allred, Orem, for Appellee.

Curtis Bullock, Murray, and Ralph Holmen, Chicago, Illinois, for Amicus Curiae.

Before Judges BILLINGS, BENCH, and ORME.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Tom Heal Commercial Real Estate, Inc. (Heal) appeals the trial court's granting of Zions Holding Company, L.C.'s (Zions) motion to dismiss.[1] Heal argues the district court erred by interpreting a real estate contract as not providing for the payment of commissions on a lease renewal and by granting attorney fees to Zions. We reverse the granting of the motion for summary judgment and remand for proceedings consistent with our opinion, vacate the award of attorney fees to Zions, and award attorney fees to Heal.

## BACKGROUND

¶ 2 Glen Overton (Overton) and Zions owned an office building in Provo, Utah and sought tenants to occupy the building. Zions hired Heal as the authorized agent who would list the property. On June 30, 1999, Heal prepared and Zions executed a Listing Agreement and Agency Disclosure Agreement (Agreement).[2] The Agreement provided for a Listing Period beginning on June 23, 1999 and ending on September 23, 1999.

¶ 3 Two paragraphs of the Agreement are central to this dispute. Paragraph two of the Agreement mandated the payment of commissions by Zions to Heal for procuring a tenant who entered into a lease and upon any lease renewal with such a tenant. Paragraph three of the Agreement provided a Protection Period for a period of twenty-four

months following the expiration of the Agreement, which would run through September 23, 2001. Specifically, paragraphs two and three of the Agreement provide:

2. Brokerage Fee. If, during the Listing Period, the Company, the Seller's Agent, The Seller, another real estate agent, or anyone else locates a party who is ready, willing and able to buy, lease, or exchange (collectively referred to as "acquire") the Property, or any part thereof, at the listing price and terms stated on the attached property data information form, or any other price and terms to which the Seller may agree in writing, the Seller agrees to pay to the Company a brokerage fee in the amount of six percent (6%) of such acquisition price. In the case of a lease of the Property, the commission shall be the commission percentage times the aggregate of all lease payments during the full term of the lease. *Seller shall be obligated to pay a commission on [sic] of six percent (6%) on any and all lease renewals at the time of such renewals.* The brokerage fee, unless otherwise agreed in writing by the Seller and the Company, shall be due and payable on (a) the date of closing of the acquisition of the Property; or (b) 50% due and payable when the lease is signed, and 50% due and payable upon the first day of the lease commencement; or (c) the first day of the lease renewal commencement; or (d) the date the option is signed. The Company is authorized to share the brokerage fee with another brokerage participating in any transaction arising out of this Listing Agreement.

3. Protection Period. *If within twenty-four months after the termination or expiration of this Listing Agreement,* the Property is acquired by a party to whom the Property was offered or shown by the Company, the Seller's Agent, the Seller, another real estate agent, or by any other

---

1. The district court treated Zions's motion to dismiss as a motion for summary judgment. *See* Utah R. Civ. P. 12(b).

2. The Agreement identified the Seller as "Glen Overton/and his interests," however, in its findings of fact and conclusions of law, the district

court found that regardless of the party listed as the Seller, the Agreement was implicitly ratified by Zions when Zions paid Heal a commission associated with the execution of the lease between Zions and a tenant that Heal procured.

person during the Listing Period, the Seller agrees to pay to the Company the brokerage fee stated in Section 2 unless the Seller is obligated to pay a brokerage fee on such acquisition to another brokerage pursuant to another valid listing contract entered into after the expiration or termination date of this Listing Agreement.

(Emphasis added.)

¶ 4 On July 30, 1999, Heal procured Zions a tenant for a three-year period, extending through August 1, 2002. On April 15, 2003, Zions executed a second lease agreement (Lease Renewal) with the tenant found by Heal for a period of two years. Heal requested a commission from Zions for the Lease Renewal and Zions refused. Zions refused to pay the Commission because the Lease Renewal was entered into outside of the twenty-four month Protection Period as provided in paragraph three of the Agreement.

¶ 5 Heal filed a complaint against Zions and Overton. Zions responded to Heal's complaint by filing a motion to dismiss. The district court granted Zions's motion, treating it as a motion for summary judgment. The court found that

> [t]here is no ambiguity in the Agreement inasmuch as paragraph three (3) in the Agreement specifically references paragraph two (2). When those provisions are harmonized together, not read in isolation as Heal asserts, it is clear that a commission is payable by [Zions] to Heal pursuant to the lease renewal only if it arises within the protection period which it does not.

Given this, the trial court determined "[a]s a matter of law[,] the reasonable interpretation of the Agreement is that no commission is owed by Zions to Heal on the lease renewal because it arose, if at all, outside of the protection period." Zions subsequently filed an affidavit seeking attorney fees and costs as allowed by the Agreement.[3] After a hear-

ing, the court granted Zions fees and costs. Heal appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Heal argues that the lower court erred in granting Zions's motion for summary judgment because it incorrectly interpreted the Agreement as providing Heal with no commissions for the Lease Renewal. The lower court's "interpretation of a contract presents a question of law, which we review for correctness." *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 16, 84 P.3d 1134. "We also review for correctness the trial court's grant of summary judgment ... and afford no deference to its legal conclusions." *Id.*

¶ 7 Heal also argues that the court erred in granting Zions attorney fees and argues that Heal should be awarded attorney fees if he otherwise prevails. The district court's granting of attorney fees to a party is a question of law reviewed for correctness. *See Keith Jorgensen's, Inc. v. Ogden City Mall Co.*, 2001 UT App 128, ¶ 11, 26 P.3d 872.

## ANALYSIS

¶ 8 Utah courts hold that "[t]he underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract." *Green River Canal Co.*, 2003 UT 50 at ¶ 17, 84 P.3d 1134 (quotations and citation omitted). In interpreting contracts, Utah courts first look at "the language within the four corners of the contract [and determine whether the contract] is unambiguous." *Id.* (quotations and citation omitted). If the language is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotations and citation omitted).

¶ 9 We determine that the plain language of the Agreement unambiguously indi-

---

3. The Agreement provides, in relevant part:
   7. **Attorney Fees**
   . . .
   If, through no fault of the Company, any litigation arises out of the Seller's·employment of the Company under this Listing Agreement

(whether before or after closing), the Seller agrees to indemnify the Company and the Seller's Agent from all costs and attorney fees incurred by the Company and/or the Seller's Agent in pursuing and/or defending such action.

cates that Heal is entitled to a commission for the Lease Renewal. Zions contends that paragraph three, containing the Protection Period clause, dictates that commissions are to be paid for the Lease Renewal only if the renewal is within twenty-four months after the expiration of the Listing Period. On the contrary, Heal contends that the Protection Period clause is irrelevant to the instant case and that paragraph two dictates the payment of commissions for the Lease Renewal. We agree with Heal.

¶ 10 We first turn to the plain language of paragraph three, the Protection Period clause. The first word of the Protection Period clause is "if." The use of the word "if" means that the clause's applicability is contingent upon a particular situation occurring. The situation covered by paragraph three occurs only when a potential tenant or buyer is shown a property during the Listing Period, but then leases or purchases the property after the expiration of the Listing Period. The Protection Period is designed to protect a broker against a tenant or buyer who waits until the expiration of the Listing Period and then rents or purchases the property without paying a commission to the broker. The plain language indicates that the Protection Period does not apply to lease renewals, rather it is designed for a particular situation irrelevant to the dispute before us. Thus, the trial court's interpretation of the Agreement was in error because the court incorrectly relied on paragraph three, the Protection Period clause, to deny Heal a commission for the Lease Renewal.[4]

¶ 11 Moreover, the trial court erred because it read paragraphs two and three together rather than separately in determining

that Heal was not entitled to a commission for the Lease Renewal. Paragraph three provides that "[i]f within twenty-four months after the termination or expiration of this Listing Agreement, the Property is acquired by a party to whom the Property was offered or shown by the Company, ... the Seller agrees to pay to the Company the brokerage fee stated in Section 2." Although paragraph three references paragraph two, it does so merely as a shorthand way to indicate the amount of the brokerage fee if one becomes due during the Protection Period and does not in any way dictate that the paragraphs are otherwise to be read together.

¶ 12 The plain language of the Agreement indicates that paragraph two controls the payment of commissions for lease renewals. Sentence three of paragraph two provides that "[the][s]eller shall be obligated to pay a commission on [sic] of six percent (6%) on *any and all lease renewals* at the time of such renewals." (Emphasis added.) Thus, the trial court erred in denying Heal a commission payment for the Lease Renewal.[5]

## CONCLUSION

¶ 13 Accordingly, we reverse the trial court's granting of the motion for summary judgment, including its granting of attorney fees to Zions. We grant Heal attorney fees on appeal and remand to the trial court for further proceedings consistent with our opinion, including the award of attorney fees incurred in proceedings before the trial court as set forth in the Agreement.

4. It is also important to note that both paragraph two and paragraph three are designed to protect the broker from different manipulative behaviors by the parties. Paragraph two prevents a landlord from signing a short lease during the Listing Period, then executing renewals outside of the Listing Period. This protection is unlimited in scope; thus, regardless of how many times the tenant renews, a commission must always be paid to the broker. Paragraph three, as described above, protects a broker against a potential tenant or buyer who waits until the expiration of the Listing Period and then rents or purchases the property without paying a commission to the broker. This protection is limited to the protection period, which, in the instant

case, is twenty-four months after the expiration of the Listing Period.

5. Zions argues it did not intend to have to pay a commission to Heal for lease renewals. In interpreting unambiguous contracts, we do not consider a party's subjective intent, but rather assume its intent is accurately reflected in the plain meaning of the terms used. *See Green River Canal Co. v. Thayn*, 2003 UT 50,¶ 17, 84 P.3d 1134 (stating "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language").

¶ 14 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and GREGORY K. ORME, Judge.