2014 UT App 187

# THE UTAH COURT OF APPEALS

LARRY MYLER,
Plaintiff and Appellant,

*v.*

BLACKSTONE FINANCIAL GROUP BUSINESS TRUST,
Defendant and Appellee.

Opinion
No. 20130246-CA
Filed August 7, 2014

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 120906291

Heather A. McDougald, Attorney for Appellant

Sean A. Monson, Attorney for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES MICHELE M. CHRISTIANSEN and JOHN A. PEARCE
concurred.[1]

BENCH, Senior Judge:

¶1     Larry Myler appeals from the district court's grant of
summary judgment in favor of Blackstone Financial Group
Business Trust (Blackstone). We affirm.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

BACKGROUND

¶2      In 2004, Midtown Joint Venture, LC (Midtown) was formed to develop the Midtown Village Project in Orem, Utah (Midtown Village). In order to secure financing for the project, Midtown obtained construction loans from Blackstone's predecessors-in-interest, as evidenced by a promissory note and deed of trust. In March 2007, Myler, who was serving as a member and manager of Midtown, executed a personal guarantee on the loans (the Guarantee). At the same time, another individual involved in the project, Jerry Moyes, signed a similar personal guarantee on the loans (the Moyes Guarantee). Midtown Village was ultimately abandoned as a result of the economic turmoil of 2008. Myler faced financial difficulties of his own and ultimately filed for bankruptcy.

¶3      In June 2011, Blackstone filed a lawsuit against Midtown and a number of other defendants, alleging various claims relating to the misappropriation of funds in connection with Midtown Village (the defalcation action). Myler was not a party to this suit. In October 2011, Blackstone reached a settlement agreement with some defendants, including Midtown, Jerry and Vickie Moyes, and First American Title Insurance Company (the Settlement Agreement).

¶4      Two provisions of the Settlement Agreement are relevant to the resolution of this case. First, section 1.C of the Settlement Agreement released most of the defendants in the defalcation action from any claims arising out of or related to the title policies, loans, defalcation action, Moyes Guarantee, or development of Midtown Village. It also provided that "dealings or transactions unrelated to the Midtown Village" were excluded from the release. Midtown was explicitly excluded from release under this provision. Second, section 2 of the Settlement Agreement required Midtown to deliver a Deed in Lieu of Foreclosure to Blackstone, which was to fully satisfy Midtown's obligations under the loans. Once the foreclosure process was accomplished via the Deed in Lieu, Blackstone was to release "Midtown, and its officers, past or present employees, members, managers, agents, representatives, insurers, and attorneys . . . as if Midtown had been specifically

identified" in section 1.C. However, section 2 contained a caveat providing that "[n]othing contained in [the Settlement] Agreement or in the Deed in Lieu" was to "be interpreted or construed in any way" that would cancel the indebtedness or "preclude Blackstone from enforcing any and all rights and remedies against or with respect to the Midtown Village and other security under and by virtue of the Trust Deed or any other instrument given to further secure the indebtedness evidenced by the Note."

¶5      A month after the Settlement Agreement was reached, Blackstone amended its complaint in the defalcation action to add Myler as a defendant, asserting claims of fraudulent conveyance and unjust enrichment. Soon afterward, however, Blackstone was informed by Myler's counsel that Myler had filed for bankruptcy protection, so Blackstone voluntarily dismissed Myler from the defalcation action. In March 2012, Blackstone filed a motion in bankruptcy court to reopen Myler's bankruptcy case. Blackstone also filed an adversary complaint alleging, first, that Myler had incurred a debt to Blackstone through fraud by using the construction loans for his personal use (the section 523 claim), *see* 11 U.S.C. § 523 (2012), and, second, that Myler had committed fraud on the bankruptcy court by failing to disclose assets (the section 727 claim), *see id.* § 727. The bankruptcy court dismissed Blackstone's adversary complaint because it was untimely.

¶6      Myler filed the present action against Blackstone in September 2012. Myler alleged that, as a member and manager of Midtown, he was a third-party beneficiary of the Settlement Agreement and that Blackstone's various legal actions against him breached the terms of the Settlement Agreement's release provisions. Blackstone responded that the actions it brought against Myler were excluded from the release because they were either brought pursuant to the Guarantee or were unrelated to Midtown Village. Blackstone filed a motion to dismiss or, in the alternative, for summary judgment, and Myler filed a cross-motion for summary judgment.

¶7      Following a hearing on the motions, the district court granted Blackstone's motion and denied Myler's. The court

determined that the Settlement Agreement did not release Myler's liability under the Guarantee and that Blackstone therefore did not breach the Settlement Agreement by adding Myler to the defalcation action or by pursuing the section 523 claim.[2] The court further determined that because the section 727 claim was unrelated to Midtown Village or the loans, it was not barred by the Settlement Agreement. The court also awarded Blackstone $14,870 in attorney fees. Myler appeals.

ISSUE AND STANDARD OF REVIEW

¶8    Myler argues that the district court erred in granting summary judgment to Blackstone. "We review 'a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness.'" *Blosch v. Natixis Real Estate Capital, Inc.*, 2013 UT App 214, ¶ 12, 311 P.3d 1042 (quoting *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600).

---

2. The district court's ruling and the parties' arguments on appeal contain little to no discussion regarding whether the claims against Myler in the defalcation action and the adversary complaint were actually based on the Guarantee rather than on Myler's personal fraudulent actions. By framing the determinative question on appeal as whether the Settlement Agreement released Myler from his obligations under the Guarantee, the parties have largely assumed that the claims were based on the Guarantee. Myler himself raises the possibility that the defalcation claims were based in tort rather than contract only in passing and does not develop that argument. Thus, we decline to consider it further and assume, without deciding, that the defalcation claims and the section 523 claim were based on the Guarantee. *See generally State v. Thomas*, 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed.").

ANALYSIS

¶9 "In interpreting contracts, Utah courts first look at the language within the four corners of the contract [and determine whether the contract] is unambiguous." *Tom Heal Commercial Real Estate, Inc. v. Overton*, 2005 UT App 257, ¶ 8, 116 P.3d 965 (alteration in original) (citation and internal quotation marks omitted). "If the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id*. (citation and internal quotation marks omitted).

¶10 Myler asserts that the Settlement Agreement unambiguously releases him from liability under the Guarantee because he is a member and manager of Midtown. Myler's argument relies primarily on the provision in section 2 indicating that once foreclosure was accomplished, Midtown and its affiliates were to be released "as if Midtown had been specifically identified" in section 1.C. He asserts that the language in section 2 providing for the continuing existence of the indebtedness and reserving Blackstone's right to pursue other security was effective only until the Deed in Lieu was delivered and foreclosure was accomplished. According to Myler, because Midtown became a section 1.C releasee after foreclosure, the foreclosure also "eradicated the [section 2] preservations of claims with respect to the Note, the Trust Deed, and the other security instruments." Myler also argues that no remaining indebtedness exists on the loans because Midtown's obligations under the loans were deemed to be fully satisfied by the foreclosure. We disagree with Myler's interpretation of the Settlement Agreement.

¶11 The caveat in section 2 reserving Blackstone's right to pursue other security plainly applies to the entire Security Agreement, including section 1.C, and there is nothing in the language of that caveat, suggesting, as Myler argues, that it could be extinguished by foreclosure. To the contrary, section 2 provides, "*Nothing contained in this Agreement or in the Deed in Lieu* . . . shall be interpreted or construed *in any way*" to (1) "release, impair, or affect the continuing existence" of Midtown's indebtedness or (2)

"preclude Blackstone from enforcing any and all rights and remedies against or with respect to the Midtown Village and other security under and by virtue of the Trust Deed or any other instrument given to further secure the indebtedness evidenced by the Note." (Emphasis added.) This provision was sufficient to reserve Blackstone's right to pursue recovery from Myler under the Guarantee. *See Horman v. Gordon*, 740 P.2d 1346, 1354 (Utah Ct. App. 1987) (recognizing that a creditor may reserve his right against a surety when releasing a principal (citing Restatement (First) of Security § 122 (1941))). The fact that the Settlement Agreement explicitly released Moyes from liability under the Moyes Guarantee further suggests that the parties did not intend to release Myler from liability under the Guarantee. *See* Utah Code Ann. § 78B-5-822 (LexisNexis 2012) ("A release given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides."); *Child v. Newsom*, 892 P.2d 9, 11–12 (Utah 1995) (construing section 78B-5-822 to require "some degree of specificity" in describing the defendants to be released and determining that boilerplate language releasing "all other persons, firms and corporations" was not sufficiently specific to effectuate a release (internal quotation marks omitted)).

¶12    Additionally, the Guarantee provided that Myler would "remain liable for any deficiency remaining after foreclosure" regardless of whether Midtown's liability was discharged. The Guarantee further provided that Myler's obligations under the Guarantee could be affected by nothing "except *full payment* and discharge of the [i]ndebtedeness." (Emphasis added.) Although the Deed in Lieu may have satisfied Midtown's obligation, as far as Blackstone was concerned, satisfaction of an obligation is not necessarily the same thing as full payment. *Cf. Town & Country v. Stevens*, 2014 UT App 172, ¶ 15 (holding that a reorganization plan entered in connection with a bankruptcy, under which the borrower would be able to satisfy its obligation to a lender, did not alter the guarantors' obligation to satisfy the debt as outlined in the original promissory note). Indeed, the Settlement Agreement itself made this distinction when it provided that "[n]othing" in the Settlement Agreement or the Deed in Lieu "shall be interpreted or construed in any way to release, impair, or affect the continuing

existence of the indebtedness" and that while the delivery of the Deed in Lieu "shall be deemed to be sufficient consideration to effect a *satisfaction* of any obligation of Midtown with respect to the amounts due under the Loans," it "shall not be deemed to be a *cancellation* of such indebtedness." (Emphasis added.) In other words, Blackstone's agreement not to pursue a deficiency judgment against Midtown was not to be construed as a recognition that the debt had been paid in full. In reviewing the Settlement Agreement as a whole, we are convinced that it unambiguously reserves Blackstone's right to bring an action against Myler pursuant to the terms of the Guarantee. *See generally ELM, Inc. v. M.T. Enters., Inc.*, 968 P.2d 861, 863 (Utah Ct. App. 1998) (explaining that contracts "should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions").

¶13    Myler also challenges the district court's conclusion that "Blackstone's claim under section 727 of the Bankruptcy Code was unrelated to Midtown or the loans." Section 727 provides that making false statements in an audit or failing to disclose assets, among other things, are grounds for revoking a bankruptcy discharge. *See* 11 U.S.C. § 727(d) (2012). Blackstone's section 727 claim is based on its allegation that after the bankruptcy petition was filed, Myler established a new company, transferred assets from another company to the new company, and then sold an interest in the new company without disclosing the proceeds of the transaction to the bankruptcy trustee. These companies were unrelated to Midtown Village, as was Myler's alleged failure to fully disclose his assets to the bankruptcy court, and the Settlement Agreement explicitly excluded "dealings or transactions unrelated to the Midtown Village" from the release. Thus, we agree with the district court that Blackstone did not breach the Settlement Agreement by asserting the section 727 claim.

CONCLUSION

¶14    We determine that Blackstone's claims in the defalcation action and its section 523 claim, brought pursuant to the Guarantee, were not released by the Settlement Agreement. The section 727

claim was likewise not subject to the release because it was unrelated to Midtown Village. Thus, Blackstone did not breach the Settlement Agreement by bringing these claims, and the district court correctly determined that Blackstone was entitled to summary judgment. We also grant Blackstone's request for attorney fees because it was awarded fees in the district court and has prevailed on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)). We therefore affirm and remand for the district court to calculate Blackstone's reasonable fees incurred on appeal.

————