**2018 UT App 153**

## THE UTAH COURT OF APPEALS

DARWIN C. FISHER, CHERYL FISHER, AND OFFICE
MANAGEMENT CONSULTANTS LC,
Appellants,
*v.*
LAVERN DAVIDHIZAR,
Appellee.

Opinion
No. 20160647-CA
Filed August 16, 2018

Fifth District Court, St. George Department
The Honorable Wallace A. Lee
No. 020500856

Emily Adams, Attorney for Appellants

Bryan J. Pattison and Timothy O. Hemming,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1     This appeal arises from a lawsuit between David Fisher (David)[1] and Dr. Lavern Davidhizar (Davidhizar), in which David sued Davidhizar for breach of a settlement agreement, and Davidhizar counterclaimed for fraudulent inducement. After summary judgment in favor of David on the breach of contract claim, but before trial on the remaining issues, David declared bankruptcy. David's parents,

---

1. Because David Fisher and the Appellants, Darwin and Cheryl Fisher, share a last name, we refer to David by his first name for clarity, with no disrespect intended by the apparent informality.

Darwin and Cheryl Fisher (collectively, the Fishers), and David's bankruptcy estate (the bankruptcy estate) entered into a Purchase Agreement, assigning to the Fishers all proceeds from the pending lawsuit. Ultimately, a jury found that David had fraudulently induced the settlement agreement and awarded damages and attorney fees to Davidhizar. On appeal, the Fishers challenge the district court's determination that they are liable for this award by virtue of the Purchase Agreement. Because we conclude that, in entering into the Purchase Agreement, the Fishers did not assume liability for Davidhizar's counterclaim, we reverse and remand to the district court for further proceedings consistent with this opinion.

BACKGROUND

¶2     David and his business partner owned and operated Office Management Consultants, LC (OMC), a billing company that leased disc decompression tables to medical providers. Davidhizar agreed to loan $101,000 to OMC to purchase two such tables, but when OMC failed to make loan payments, a dispute arose over ownership of the tables. OMC and Davidhizar entered into a settlement agreement to resolve the dispute. Soon thereafter, Davidhizar repudiated the settlement agreement, stating that he "wasn't going to follow through with the agreement, because it had been misrepresented."

¶3     David and OMC sued Davidhizar, alleging breach of the settlement agreement. Davidhizar's answer raised a counterclaim for fraudulent inducement. David and OMC filed a motion for summary judgment on the breach of contract claim, which the district court granted, reserving the issue of damages for trial. Before a trial could be held on the amount of David's

damages as well as the merits of Davidhizar's fraudulent inducement counterclaim,[2] David filed for bankruptcy.

¶4     The Fishers and the bankruptcy estate both asserted an interest in the pending lawsuit and eventually entered into a Purchase Agreement to resolve the dispute. The Purchase Agreement recited the Fishers' contention that, prior to filing for bankruptcy, David had "assigned all proceeds from the Davidhizar Action to [them]." It also recited the trustee's contrary position that the bankruptcy estate's property included "any assignment to the Fishers by [David] of any proceeds from the Davidhizar Action[]." The express purpose of the Purchase Agreement was "to settle any dispute with respect to the ownership of the causes of action asserted in the Davidhizar Action." As part of the Purchase Agreement, the Fishers "agree[d] to accept[] any and all interest of the Bankruptcy Estate in and to the Davidhizar Action and to the causes of action and claims asserted by [David] therein."[3] The Fishers then moved to substitute themselves as plaintiffs and to remove David as plaintiff in the lawsuit against Davidhizar. The court granted the motion.

¶5     Because the Fishers never moved to substitute themselves as counter-defendants, David remained the sole named counter-defendant in the lawsuit. Davidhizar later moved the

----

2. The district court initially struck Davidhizar's fraudulent inducement counterclaim, concluding that the claim had not been pleaded with particularly. This court reversed and remanded. *See Fisher v. Davidhizar*, 2011 UT App 270, ¶¶ 5, 12, 263 P.3d 440.

3. When quoting the Purchase Agreement, we have corrected the misspelling of Davidhizar's name. Brackets have not been used to signal this correction.

district court to order the Fishers to assume liability for the fraudulent inducement counterclaim should he be awarded any damages or attorney fees. The district court granted the motion, reasoning that the Purchase Agreement "conveyed David's entire legal share in the present case," which "included not only David's rights and benefits associated with this matter, but also his liabilities and risks."

¶6    The case proceeded to trial on three issues: (1) David's damages on his breach of contract claim; (2) Davidhizar's fraudulent inducement counterclaim; and (3) Davidhizar's damages, if any. After hearing all of the evidence, the jury found that David had fraudulently induced Davidhizar to enter the settlement agreement, and it awarded him $78,600 in damages. Given that the settlement agreement was fraudulently induced, the jury determined that Davidhizar was not liable for any damages arising from David's breach of contract claim.

¶7    After the jury issued its verdict, the district court awarded $110,993 in attorney fees to Davidhizar. The court based its award on the settlement agreement's attorney fee provision and Utah Code section 78B-5-826 (the reciprocal attorney fees statute). The Fishers appeal.

ISSUES AND STANDARDS OF REVIEW

¶8    We address two issues in this appeal.[4] The Fishers first contend the district court erred in holding them liable on Davidhizar's counterclaim. Specifically, they argue that under the plain language of the Purchase Agreement, they purchased

---

4. Because we conclude that the Fishers did not assume liability for the counterclaim, we do not reach their alternative contention that Davidhizar failed to prove damages.

only David's claim in the lawsuit, not his liability for the counterclaim. The district court's interpretation of a contract is a legal question that we review for correctness. *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 15, 367 P.3d 994.

¶9 The Fishers also contend that, if they prevail on appeal, we should remand the issue of attorney fees to the district court to reconsider its prior award to Davidhizar. "Whether attorney fees are recoverable is a question of law, which we review for correctness." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 16, 40 P.3d 1119. But because the question of which party is the prevailing party depends on the context of each case, "it is appropriate to leave this determination to the sound discretion of the trial court." *Id.* ¶ 25. "We therefore review the trial court's determination as to who was the prevailing party under an abuse of discretion standard." *Id.*

## ANALYSIS

### I. Liability for the Counterclaim

¶10 The Fishers and Davidhizar both contend—for different reasons—that the Purchase Agreement is unambiguous. We agree with the Fishers' interpretation of the Purchase Agreement and conclude that the plain language of its recitals and transfer provision unambiguously transferred only David's interest in any proceeds from the lawsuit, not his potential liability for Davidhizar's counterclaim.

¶11 To interpret the Purchase Agreement, we apply general principles of contract law. *See Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013) (applying contract law to a settlement agreement). "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract." *State v. Bruun*, 2017 UT App 182, ¶ 24,

405 P.3d 905 (quotation simplified). "[W]hether an assignment of the entire contract includes an assumption of liabilities depends on the terms of the assignment and the parties' intent." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991). "[T]he best indication of the parties' intent is the ordinary meaning of the contract's terms." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994. Accordingly, if we conclude that "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotation simplified).

¶12 The Fishers contend that the parties' intent to assign only the bankruptcy estate's interest in David's causes of action against Davidhizar is unambiguously expressed in three recitals—recitals D, E, and F—which frame the dispute that prompted the Fishers and the bankruptcy estate trustee to enter into the Purchase Agreement. Recital D sets forth the Fishers' contention that, prior to filing for bankruptcy, David had "assigned all proceeds from the Davidhizar Action to [them]." Recital E describes the trustee's contrary contention that the bankruptcy estate's property included "any assignment to the Fishers by [David] of any proceeds from the Davidhizar Action[]." Recital F then explains that, in entering into the Purchase Agreement, the Fishers and the trustee aimed "to settle any dispute with respect to the ownership of the causes of action asserted in the Davidhizar Action," that is, who owned David's claims against Davidhizar. When recital F is read in conjunction with recitals D and E—which mention proceeds but not liabilities[5]—it is clear the Purchase Agreement's sole purpose

---

5. "Proceeds" are defined as "the value of land, goods, or investments when converted into money[ or] the amount of money received from a sale," *Proceeds*, Black's Law Dictionary

(continued…)

was to transfer to the Fishers ownership of potential proceeds from David's causes of action. Where the Purchase Agreement expressly refers to proceeds and David's causes of action but makes no reference to liabilities or claims against David, the plain language of the Purchase Agreement provides no basis to conclude that the Fishers assumed liability for Davidhizar's counterclaim against David.

¶13 Davidhizar nevertheless contends that the term "Davidhizar Action," as defined by the Purchase Agreement, encompasses the entire state court action, including not only David's claim but Davidhizar's counterclaim as well. In response, the Fishers contend that in the transfer provision, "Davidhizar Action" is modified by a preceding clause, which provides that "the Fishers agree to accept[] any and all interest of the Bankruptcy Estate in and to the Davidhizar Action." According to the Fishers, the bankruptcy estate's interest in the lawsuit was limited to potential assets. In support of their argument, the Fishers refer to recital C, which states that "[p]ursuant to 11 U.S.C. § 541(a)," the bankruptcy estate acquired "all of [David's] legal and equitable interests in property, including any and all interest in the Davidhizar Action."

¶14 We agree that reference to section 541(a) in recital C of the Purchase Agreement supports the Fishers' argument. Upon filing a petition for bankruptcy, a debtor's property is transferred into an estate. *See* 11 U.S.C. § 541(a) (2012). Under section 541(a), this property includes anything that falls into seven broad categories. *Id.* Significantly, these categories include

---

(…continued)
(10th ed. 2014), while "liability" is defined as "[a] financial or pecuniary obligation in a specified amount," *Liability*, Black's Law Dictionary (10th ed. 2014).

only a debtor's assets, which is to say, interests in property that the trustee can liquidate and sell to satisfy the debtor's debts. *See id.* While potential proceeds from a debtor's causes of action would be considered an asset, potential liability on a counterclaim would not. *See Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (stating that "a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate"); *see also* 11 U.S.C. § 101(12) (2012) (defining "'debt'" as "liability on a claim"). The plain language of both the transfer provision and recital C confined the bankruptcy estate's interest in the "Davidhizar Action" to assets that the estate had acquired pursuant to section 541, which included, among other things, "the causes of action and claims asserted by [David]."[6]

¶15 Finally, Davidhizar contends that "[t]he Fishers' interpretation of [the Purchase Agreement] also violates well-established principles of contract interpretation by rendering much of [the transfer provision] meaningless." The transfer provision provides that "the Fishers agree to accept[] any and all interest of the Bankruptcy Estate in and to the Davidhizar Action *and* to the causes of action and claims asserted by [David] therein." (Emphasis added.) Davidhizar argues that, under the Fishers' interpretation of the transfer provision, the phrases "in and to the Davidhizar Action" and "to the causes of action and claims asserted by [David] therein" would be redundant. To address this perceived redundancy, Davidhizar contends that the phrase "in and to the Davidhizar Action" should be interpreted to mean that the Fishers "stepp[ed] into David's shoes as litigant," thereby accepting his rights and liabilities.

---

6. Our holding in this case should not be construed to address whether a bankruptcy estate trustee could ever transfer an interest in a potential liability or debt.

¶16   In interpreting a contract, we "consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 (quotation simplified). In other words, "we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210 P.3d 263.

¶17   Davidhizar's proposed interpretation of the transfer provision does not eliminate the redundancy. Even if "Davidhizar Action" were interpreted to include both the claims and counterclaims, the phrase "and to the causes of action and claims asserted by [David] therein" would be redundant, at least as to David's claims. The only way to eliminate the redundancy would be to read "Davidhizar Action" as referring only to David's liability for the counterclaim. But recital B defines "Davidhizar Action" as "a lawsuit pending in the Fifth Judicial District Court in and for Washington County, State of Utah, *David Fisher, individually and on behalf of Office Management Consultants, L.C. vs. Lavern Davidhizar, an individual*, Case No. 020500856." This definition necessarily would include the claims that David, individually and on behalf of OMC, has asserted against Davidhizar. On the other hand, neither recital B nor the transfer provision mentions Davidhizar's counterclaim. To harmonize both phrases, we agree with the Fishers' interpretation that the phrase "in and to the Davidhizar Action" generally identifies that lawsuit, while the phrase "to the causes of action and claims asserted by [David] therein" clarifies the part of the lawsuit to which the Purchase Agreement pertains.

¶18   Because the Purchase Agreement, by its terms, transferred only the bankruptcy estate's interest in David's potential proceeds from the Davidhizar Action, the district court erred in interpreting the agreement to transfer to the Fishers both potential proceeds and potential liabilities. Accordingly, we

reverse the court's order imposing liability on the Fishers for Davidhizar's counterclaim against David.

## II. Attorney Fees

¶19   The Fishers contend that we should remand this case to the district court to reconsider its attorney fees award because "Davidhizar will have no longer wholly prevailed" if we conclude they are not liable on the counterclaim.[7] Because the district court awarded attorney fees to Davidhizar based on a determination that he was the prevailing party, the Fishers argue that a remand is necessary for the district court to consider this question in light of the outcome of this appeal.

¶20   "In Utah, attorney fees are awardable only if authorized by statute or contract." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119 (quotation simplified). Here, the district court awarded $110,993 in attorney fees and costs to Davidhizar under both the settlement agreement's attorney fees provision and the reciprocal attorney fees statute. *See* Utah Code Ann. § 78B-5-826 (LexisNexis 2012). Although the Fishers contend that the district court erred in basing its attorney fees award on the void settlement agreement, they concede that the court correctly applied the reciprocal attorney fees statute. Under that statute,

---

7. Davidhizar contends that because the Fishers acknowledge that the attorney fees issue was unpreserved, we should reject their request for remand on this basis. However, because the Fishers' attorney fees issue depended on the outcome of this appeal, it would have been futile to raise such a challenge below. *See In re adoption of K.A.S.*, 2016 UT 55, ¶ 56 n.4, 390 P.3d 278 (Lee, J., dissenting) (noting that "[t]he rule of preservation incorporates a principle of reasonableness" that includes the "doctrine of futility"; "our courts accordingly excuse a failure to object where doing so would be futile").

courts have discretion to award attorney fees and costs to the party that prevails in a civil action based on a written contract if that contract allows at least one party to recover those fees. *See id.*

¶21    The district court concluded that Davidhizar was the prevailing party because he successfully defended against the breach of contract claim and succeeded on his fraudulent inducement counterclaim. On appeal, however, the Fishers have established that they did not assume liability for the counterclaim. Accordingly, they argue that the prevailing party in this action is an open question and a remand is therefore prudent. We agree.

¶22    As explained, *supra* ¶ 9, the district court is better suited to determine which party, if any, is the prevailing party in light of the outcome of this appeal. *See R.T. Nielson Co.*, 2002 UT 11, ¶ 25. We thus remand this case to the district court for the limited purpose of determining if either party is entitled to attorney fees as the prevailing party.

CONCLUSION

¶23    We conclude that, under the plain language of the Purchase Agreement, the Fishers did not assume liability for Davidhizar's counterclaim. We therefore reverse the district court's order imposing liability on the Fishers. In addition, because we conclude that the outcome of this appeal may change the award of attorney fees, we vacate and remand this case to the district court for the limited purpose of determining which party, if any, is the prevailing party.

_____