2025 UT App 97

# THE UTAH COURT OF APPEALS

MEADE RECOVERY SERVICES LLC,
Appellee,
*v.*
JORDAN DAVIDSON,
Appellant.

Opinion
No. 20230653-CA
Filed June 26, 2025

Second District Court, Farmington Department
The Honorable Michael D. DiReda
No. 189703150

Ronald Ady, Attorney for Appellant

Jonathan E. Jenkins and Dalton Jones Smuin,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1 Jordan Davidson underwent surgery with anesthesia. When the provider of the anesthesia services went unpaid, it sued Davidson for payment. At trial, Davidson raised several legal defenses, which the district court rejected. Davidson raises similar arguments on appeal, which we likewise reject. We thus affirm the judgment of the district court and remand this matter for a calculation of fees incurred on appeal.

BACKGROUND

¶2    In 2016, Davidson had surgery on her leg. Layton Ambulatory Anesthesia (LAA) provided Davidson with anesthesia services for the surgery. Prior to the surgery, Davidson signed an "Assignment to Anesthesia Provider" agreement (the Agreement) with LAA. The Agreement provided, in part,

> I hereby assign and authorize payment directly to the physician or anesthesia provider for the anesthesia services rendered. This shall include all insurance benefits payable for physician services. I understand that I am financially responsible for charges not covered by these benefits. In the event of failure to pay, I agree to pay in accordance with the Physician's regular rates and terms. . . . Should a collection become necessary, I as the responsible party, agree to pay an additional 40% for collection agency fees and legal fees of collection including attorney fees, court costs, and billing fees.

¶3    After the surgery, LAA attempted to submit the bill to Davidson's insurers. Neither insurer paid the bill. LAA's account ledger notes reflect that the reason neither insurer paid was because of "coordination of benefits" issues. Davidson does not contest the fact that neither insurer has paid.

¶4    After it was unable to collect payment from Davidson's insurers, LAA engaged Meade Recovery Services LLC (Meade) to pursue payment from Davidson personally. In 2018, Meade, as assignee for LAA, filed a collection lawsuit. After extensive pretrial proceedings, the case was scheduled for a bench trial in 2022.

¶5    The court held a full-day bench trial and then entered judgment against Davidson. The court concluded that "Davidson's insurers denied the claim and refused to pay for the

anesthesia services" and that "Davidson agreed in the contract that in the event of failure to pay, she would pay." Pursuant to the Agreement, the court also awarded Meade "interest, court costs, billing fees, and attorney fees." Davidson filed a motion for a new trial, but the court denied that motion. Davidson then appealed the court's decision.

ISSUES AND STANDARDS OF REVIEW

¶6 Davidson raises three issues on appeal. First, she argues that the district court interpreted the Agreement incorrectly. She asserts that under the correct interpretation, she agreed to be responsible only for charges that were not covered by her insurance, and that Meade cannot demonstrate that her insurance did not cover the procedure. "The district court's interpretation of a contract is a legal question that we review for correctness." *Fisher v. Davidhizar*, 2018 UT App 153, ¶ 8, 436 P.3d 123.

¶7 Second, Davidson claims that the district court committed clear error in finding that there was no evidence of an agreement between LAA and either of her insurers such that section 31A-45-301(5) of the Utah Code would not apply. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998). The factual findings of the district court are reviewed for clear error. *See Gillmor v. Macey*, 2005 UT App 351, ¶ 38, 121 P.3d 57 ("So long as the trial court's findings of fact are sufficiently supported by the evidence and not clearly erroneous, we give great deference to a court's findings, giving due regard to the trial court's favorable position for weighing issues of witness and evidence credibility.").

¶8 Lastly, Davidson argues that the district court was incorrect in finding that there was a failure to pay on her part. She argues that due to an implied-in-fact contract, she cannot have

breached the Agreement until LAA fulfilled its obligations by requesting arbitration. We review the interpretation of a contract for correctness. *Fisher*, 2018 UT App 153, ¶ 8.

## ANALYSIS

### I. Meaning of the Agreement

¶9      "In interpreting contracts, Utah courts first look at the language within the four corners of the contract and determine whether the contract is unambiguous." *Tom Heal Com. Real Estate, Inc. v. Overton*, 2005 UT App 257, ¶ 8, 116 P.3d 965 (cleaned up). Under Utah law, whether a contract is facially ambiguous is "a question of law to be determined by the judge." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269.

¶10      "A contract is facially ambiguous if its terms are capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (cleaned up). A "reasonable interpretation" is one "that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395. "Crucially, ambiguity is present only if both proffered interpretations of the contract's language are tenable and in keeping with the contract's language." *Ocean 18 LLC v. Overage Refund Specialists LLC* (*In re Excess Proceeds from Foreclosure of 1107 Snowberry St.*), 2020 UT App 54, ¶ 23, 474 P.3d 481 (cleaned up). "Terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Mind & Motion*, 2016 UT 6, ¶ 24 (cleaned up).

¶11      "If the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language,

and the contract may be interpreted as a matter of law." *Tom Heal*, 2005 UT App 257, ¶ 8 (cleaned up); *see also Peterson & Simpson v. IHC Health Services, Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716 ("As with any contract, we determine what the parties have agreed upon by looking first to the plain language within the four corners of the document."); *Willow Creek Assocs. of Grantsville LLC v. Hy Barr Inc.*, 2021 UT App 116, ¶ 41, 501 P.3d 1179 ("When we interpret a contract, we start with its plain language." (cleaned up)); *Wittingham, LLC v. TNE LP*, 2020 UT 49, ¶ 71, 469 P.3d 1035 ("When interpreting a contract or deed, a court attempts to give effect to the intent of the parties by first looking to the plain language within the four corners of the deed or contract." (cleaned up)).

¶12    Here, the plain language of the Agreement is unambiguous because its terms are capable of only "one reasonable interpretation." *See Mind & Motion*, 2016 UT 6, ¶ 24 (cleaned up). In determining whether a contract is ambiguous we attempt to "harmoniz[e] conflicting or apparently ambiguous contract language" by examining "the entire contract and all of its parts in relation to each other." *Gillmor v. Macey*, 2005 UT App 351, ¶ 19, 121 P.3d 57 (cleaned up).

¶13    The alleged conflict here arises from the third and fourth sentences of the Agreement. The third sentence reads,

> I understand that I am financially responsible for charges not covered by these benefits.

The fourth sentence reads,

> In the event of failure to pay, I agree to pay in accordance with the Physician's regular rates and terms.

Davidson asks us to rely more heavily upon the third sentence of this provision, while Meade asks us to rely more heavily upon the

fourth sentence. But our decision that the language is unambiguous is not based on a party's preference for a particular interpretation. Instead, our conclusion must rest on the fact that one of the preferred interpretations is reasonable and the other is not.

¶14    Davidson argues that under this language, she was liable only if her insurers did not *cover* the charges. In essence, she claims that there was no evidence of a coverage problem; instead, the only evidence was that there was a coordination-of-benefits problem. In other words, she's saying that the issue revolved not around whether the charges were covered, but around which insurer would, in fact, cover them. And thus, Davidson asserts, it is Meade's burden to prove that the charges were not covered by Davidson's insurers.

¶15    At oral argument Davidson explained that her position was based on the idea that in construing contracts we are to give each provision meaning and avoid rendering any portion superfluous. *See Utah Valley Bank v. Tanner*, 636 P.2d 1060, 1061–62 (Utah 1981) (stating that we consider "[e]ach contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none"). She argues that Meade's interpretation of the Agreement renders the third sentence surplusage. She asserts that Meade's reading was deficient in this respect since it would mean that the Agreement "has the same legal effect without the third sentence because the fourth sentence—failure to pay—does all the work." In other words, Davidson maintains that Meade's interpretation cannot be correct because it would render the Agreement *with* the third sentence as doing the same as the Agreement *without* the third sentence. Davidson argues that if Meade's reading were adopted, she would be liable when her insurers fail to pay, regardless of whether or not the third sentence is a part of the Agreement. Thus, Davidson maintains that, because that construction does not give unique purpose and power to the third sentence, it cannot be the correct construction.

¶16     But Davidson's interpretation is not reasonable. It stretches the meaning of the Agreement beyond its natural plain language. Davidson's interpretation requires one to completely ignore or rewrite portions of the Agreement. For example, if the fourth sentence were absent altogether and the only mention of liability was in the third sentence and in reference to coverage, Davidson's interpretation might be tenable. For in that scenario, the obligation arising from the "failure to pay" would be absent and the only obligation remaining would relate to having coverage. Or if the fourth sentence read, "In the event of *lack of coverage*, I agree to pay . . . ," Davidson's interpretation would make somewhat more sense. But Davidson's suggested reading is inconsistent with the plain language of the Agreement as it stands, and thus, her interpretation is unreasonable.

¶17     On the other hand, Meade's reading—the reading adopted by the district court—does not require us to alter any plain language to harmonize the entire contract. Under Meade's reading, the third sentence may not be at issue here, but that does not mean it is completely meaningless when read in the context of the entire agreement. The third sentence is preceded by the first two, which read, "I hereby assign and authorize payment directly to the physician or anesthesia provider for the anesthesia services rendered. This shall include all insurance benefits payable for physician services." In the context of these sentences, the third sentence completes the contours of Davidson's financial obligations. It serves to clarify that although Davidson is authorizing payment directly between the physician and her insurers for services that her insurers cover, she remains financially responsible for anything that is not covered. It makes sense that the contracting parties would want to clarify, in the context of this broad assignment, that Davidson will still be liable for any services that are not covered. It also makes sense that the Agreement goes on to clarify that "[i]n the event of failure to pay, [Davidson agrees] to pay."

¶18    We can see how, under this interpretation, there may be some functional overlap between these two sentences. For example, in a situation where services were not covered by Davidson's insurers, there would be no expectation that her insurers would pay for those services. After all, those services would not be included in the coverage Davidson had acquired. But that does not mean Davidson would be exempt from paying for those services. In that situation, Davidson would be both financially responsible for those services under the third sentence and required to pay for those services under the fourth sentence; the two sentences would accomplish the same thing. By contrast, in the situation at issue here, Davidson is required to pay—pursuant to the fourth sentence—for the services that her insurers failed to pay for, even though whether the services were covered (an issue which would implicate the third sentence) is disputed. Just because one of the sentences is not operative here does not mean that it is surplusage; instead, it just means that it operates in a different circumstance. And we do not have to conjure up a scenario where the third sentence is doing something that the fourth sentence cannot do on its own in order for this reading to be a reasonable one. While this is certainly not the most artfully drafted contract, this interpretation is reasonable and gives meaning to each provision. More importantly, it does not require us to rewrite portions of the Agreement or ignore other portions.

¶19    Because there is only one reasonable interpretation of the contractual language, we conclude that the language is unambiguous. "If the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Tom Heal*, 2005 UT App 257, ¶ 8 (cleaned up).

¶20    Looking at the plain language, the Agreement states, "In the event of failure to pay, I agree to pay in accordance with the Physician's regular rates and terms." By signing the Agreement, Davidson agreed that if there was a failure to pay, she would pay.

"Failure" is defined as an "omission of performance of an action or task," especially "neglect of an assigned, expected, or appropriate action." *Failure*, Webster's Third New Int'l Dictionary (2002). It may very well have been expected, based on the earlier provisions of the Agreement, that Davidson's insurers would pay for any covered charges. But in the event that they did not perform that action—for whatever reason—it was Davidson who agreed to pay. Here, there is no dispute that no one paid the charges, and thus, Davidson is liable. Furthermore, she agreed to pay "in accordance with the Physician's regular rates and terms." What Davidson agreed to pay has nothing to do with what is and is not covered by her insurers.

¶21 Under Davidson's proposed construction, she has not agreed to pay because the sentence, "I understand that I am financially responsible for charges not covered by these benefits," actually limits her liability to pay for services her insurance explicitly did not cover. But this reading is inconsistent with the plain language of the Agreement because it necessarily construes the third sentence as directly conflicting with the fourth sentence. Certainly, it's true that Davidson agreed to be financially responsible for payments not covered by her insurance benefits. But she also agreed that she would pay for the services she received if the insurers failed to pay—even though those services were presumably covered.

¶22 Davidson further argues that the district court was wrong in finding that there was "no evidence before the Court that the LAA services were covered services by [Davidson's] insurers." She claims that this conclusion inappropriately places "the burden of proving insurance coverage on [Davidson]." She maintains that if Meade cannot prove that the insurance claim was denied for lack of coverage, then she did not have an obligation to pay for the services she received.

¶23 Here, there is some dispute as to whether Davidson's insurance benefits technically covered the services she received. But that dispute is irrelevant to our construction of the Agreement and our conclusion. While the district court did find that there was no evidence of coverage, this finding was not necessary to its ultimate conclusions that "Davidson's insurers . . . refused to pay for the anesthesia services" and that "Davidson agreed in the contract that in the event of failure to pay, she would pay in accordance with the Physician's regular rates and terms." Here, the dispute about whose burden it was to prove whether the services were covered is irrelevant because the key fact is that Davidson agreed to accept the ultimate responsibility to pay for the services she received. There is no dispute that there was a failure to pay, and in that situation, Davidson agreed to pay.

¶24 The language of the Agreement is unambiguous, and it requires Davidson to pay for the services she receives, even if her insurers fail to pay. Accordingly, because there is no dispute that there was a failure to pay, Davidson is contractually obligated to pay for the services under the facts of this case.

## II. Applicability of the Statute

¶25 Davidson next alleges that she was protected from Meade's collection action by a prohibition on collection in the Utah Code. Section 31A-45-301(5)(a) states, "A person listed in Subsection (5)(b) may not bill or maintain any action at law against an enrollee to collect: (i) sums owed by the organization; or (ii) the amount of the regular fee reduction authorized under Subsection (1)(b)(ii)." Utah Code § 31A-45-301(5)(a). Subsection (5)(b) goes on to clarify, "Subsection (5)(a) applies to: (i) a network provider; (ii) an agent; (iii) a trustee; or (iv) an assignee of a person described in Subsections (5)(b)(i) through (iii)." *Id.* § 31A-45-301(5)(b).

¶26 The term "network provider" is specifically defined: "'Network provider' means a health care provider who has an agreement with a managed care organization to provide health

care services to an enrollee with an expectation of receiving payment, other than coinsurance, copayments, or deductibles, directly from the managed care organization." *Id.* § 31A-1-301(136). Thus, in order to qualify as a network provider under subsection (5)(b), the health care provider must have an agreement with a managed care organization.

¶27 Davidson argues that section 31A-45-301(5) applies to her case and that, as a result, she is protected from any collection efforts by LAA. She alleges that LAA is a "network provider" and that, under the code, it may not "bill or maintain any action at law against" her, "an enrollee."

¶28 Davidson argues that there was an agreement between LAA and her insurers. She suggests that this agreement "was an exhibit to [Davidson's] summary judgment briefing." But no such agreement was ever entered into evidence at trial. Davidson suggests that the "relevant part of the [agreement] . . . was read into the record at trial." But the portion of the record Davidson cites to support this proposition demonstrates not that any relevant portion of the agreement was read into the record but only that Davidson was attempting to introduce the agreement as evidence. Davidson's entire attempt to introduce what she now argues is the agreement that provides support for this statutory prohibition ends when her attorney responded to an objection saying, "[W]e're going to leave [the agreement] out of it. I'll withdraw it."

¶29 Without the benefit of any agreement being admitted into evidence, Davidson's argument is reduced to her final claim on this issue, which is that "the only reason that LAA would submit [Davidson's] claim to [Davidson's insurers] was because there was a network provider agreement between LAA and [Davidson's insurers]." Davidson thereby argues that we should assume there is an agreement between LAA and her insurers based on their actions. But the statute that Davidson is asking us

to apply requires, "Every contract between a managed care organization and a network provider shall be in writing . . . ." *Id.* § 31A-45-301(1).

¶30 Without a written agreement before it, the district court opined,

> [T]here has not been evidence presented to establish a contractual agreement between LAA and any of the insurance companies that have been referenced . . . . [T]here's simply been no evidence of a contract between LAA and those insurance entities. For the Court to, as you put it, invoke the statutory prohibition of going after the enrollee, there would have to first be proof of a contract between LAA and those insurance entities, and there's been no evidence of that.

Davidson has not shown otherwise, and we cannot say that the ultimate finding was clearly erroneous. Given that this threshold requirement was not met, the district court did not err in concluding that section 31A-45-301(5) does not apply.

### III. Arbitration Requirement

¶31 Lastly, Davidson argues that "[t]here could not be a failure to pay" on her part "when LAA never completed the claims submission process by requesting arbitration." Davidson specifically argues that due to the "context of [the Agreement]" and the "implied covenant of good faith and fair dealing," "LAA had a duty to engage in the claims submission process in a good faith manner." Davidson claims that LAA "should have at least requested that [Davidson's insurers] comply" with rule R590-131-6(7)(a) of the Utah Administrative Code, a regulation that requires insurers in coordination-of-benefits disputes to "immediately pay the claim in equal shares and determine their relative liabilities following payment." Utah Admin. Code R590-131-6(7)(a).

Davidson thus claims that if such a request did not result in payment, LAA "should have requested arbitration."

¶32    We need not address this issue because Davidson did not preserve it for appeal. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443.

¶33    "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Id.* (cleaned up). We can identify no place in the record, and Davidson points to none, where she claimed LAA was required to submit her claim to arbitration in order to comply with contractual obligations or other legal duties. In her reply brief, Davidson claims that this is because "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." (Quoting *id.* ¶ 14 n.2.) Davidson does not, however, persuasively tie her claim about arbitration to any properly preserved issue or theory. Because this issue is not preserved, we decline to address it here.

IV. Attorney Fees

¶34    "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Here, the parties acknowledge that the Agreement unambiguously allows for an award of attorney fees. The district court awarded Meade attorney fees below, and both parties ask to be named the prevailing party here and awarded attorney fees on appeal.

¶35    "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Tronson v. Eagar*, 2019 UT App 212, ¶ 39, 457 P.3d 407 (cleaned up). Here, Meade received attorney fees below and is the

prevailing party on appeal, and thus, it is entitled to recover reasonable attorney fees incurred on appeal.

## CONCLUSION

¶36 Because the plain reading of the Agreement requires Davidson to pay for the services she received and because no statute bars Meade from recovering, we affirm the district court's ruling and remand the matter for a calculation of further fees.

————————